[No. 6763–1. Division One. September 17, 1979.]

PAUL D. DUNSTAN, ET AL, *Appellants*, v. THE CITY OF SEATTLE, ET AL, *Respondents*.

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen*, for appellants.

*Douglas N. Jewett, City Attorney, Ellen D. Peterson* and *Lawrence K. McDonell, Assistants, Lane, Powell, Moss & Miller,* and *Dale W. House,* for respondents.

SWANSON, A.C.J.—Paul and Roberta Dunstan appeal an adverse summary judgment in an action in tort against the City of Seattle.[1] The Dunstans assign error to the trial court's conclusions of law that the action was barred by (1) a 60–day statute of limitation, (2) the Dunstans' failure to exhaust legal remedies, and (3) their failure to allege and present evidence establishing a cause of action in either common law, negligence, or interference with prospective economic advantage. We find no error, and affirm.

The Dunstans owned property near the Hiram Chittendon Locks and Botanical Gardens in Seattle. In 1973, they applied for a building and use permit to construct a restaurant. Superintendent of Buildings Alfred Petty advised the Dunstans that an environmental impact assessment would be necessary before the requested permit could be considered. In April 1974, a final environmental impact statement was published describing traffic and parking problems and identifying as a mitigating measure elimination of a fast–food service area proposed by the Dunstans. On June 7, 1974, Petty granted a modified building permit in an effort to lessen foreseen environmental impacts. Notice thereof was published pursuant to the State Environmental Policy Act of 1971, RCW 43.21C.080 (SEPA).

Apparently because of the modified nature of the granted permit, a business relationship between the Dunstans and a Mr. Cohn, a restaurateur who had intended to lease the building, failed. Ultimately, Cohn foreclosed a mortgage he held on the property as security for monies advanced to the Dunstans.

---

[1] Although decided by summary judgment, the case at trial included the taking of testimony and presentation of findings of fact and conclusions of law.

On June 23, 1976, 2 years after issuance of the modified building permit, the Dunstans filed a complaint for damages in tort and inverse condemnation against the City of Seattle and Petty. On numerous motions for summary judgment, the trial court made findings of fact and conclusions of law. Among these were findings and conclusions that "[t]he only justification for the deletion of a portion of the building permit applied for . . . was environmental considerations under the State Environmental Policy Act," finding of fact No. 27, that "[t]here is no evidence that the defendant Petty . . . did not act in good faith . . .", finding of fact No. 23, but that Petty's final decision was "arbitrary and capricious . . .", as there was "no substantial evidence to support defendants' claim of unavoidable, adverse environmental impact. . . ." Conclusion of law No. 2. The trial court went on to hold the Dunstans' action untimely, pursuant to the 60–day statute of limitation of RCW 43.21C-.080(2), and improper in view of a failure to exhaust available legal remedies, particularly review through certiorari. The trial court also held motions for summary judgment should be granted because the Dunstans "failed to allege and present any evidence establishing negligence per se or common law negligence . . . interference with prospective economic advantage . . .," conclusion of law No. 12, or "inverse condemnation. . . ." Conclusion of law No. 13.

On appeal, the Dunstans argue as follows: First, the cause of action sounded in tort and thus should not be controlled by the SEPA statute of limitation. Second, the issuance of a building permit is a ministerial task, to which a property owner enjoys a vested right, should the requested permit comply with applicable legal requirements. Third, in the absence of adverse environmental factors—as was adjudged the situation herein—the refusal to issue a requested permit raises the possibility of numerous causes of action in tort.

Because the question of the SEPA statute of limitation is dispositive, we will not discuss at length the Dunstans'

other arguments. We note in passing, however, that the Dunstans are incorrect in terming consideration of a building permit ministerial where SEPA applies. Beyond peradventure, when applicable, SEPA becomes an integral aspect of requisite building and zoning code regulations and, as such, interjects an element of discretion into the process of deciding whether said regulations are met. *See Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978); *Eastlake Community Council v. Roanoke Assocs., Inc.,* 82 Wn.2d 475, 513 P.2d 36, 76 A.L.R.3d 360 (1973); Note, *The State Environmental Policy Act of 1971 and its 1973 Amendments,* 49 Wash. L. Rev. 509 (1974); City of Seattle Building Code, ordinance No. 106350, § 302(a)(1) (1977). We also note our skepticism at the proposition that the instant public officials' *good faith* decision to grant a building permit different from that requested, made within the mandates of SEPA—although later held to be arbitrary and capricious—could be grounds for suit for damages in tort. The Dunstans rely heavily on the trial court's "arbitrary and capricious" conclusion in arguing causes of action for negligence and interference with prospective economic advantage inure. Such a conclusion cannot establish unilaterally tort liability. Singularly lacking from the Dunstans' arguments are showings of a duty owed, in the allegation of negligence, and any intentional interference, in the allegation of interference with prospective business advantage. Thus, the trial court's judgment could be affirmed on several grounds.

As regards the question of the timeliness of the Dunstans' suit, the trial court relied upon the statute of limitation of SEPA which read in pertinent part:

(2) Any action to set aside, enjoin, review, or otherwise challenge any such governmental action for which notice is given as provided in subsection (1) of this section on grounds of noncompliance with the provisions of this

chapter shall be commenced within sixty days from the date of filing of the notice with the department of ecology, the date of final newspaper publication, or date of mailing, if applicable, whichever is later, or be barred:
. . .

RCW 43.21C.080.[2] The Dunstans contend this provision should not affect their suit, as "[t]his action is *not a challenge to any* governmental action *on the grounds of noncompliance with the provisions of Chapter 43.21C* but is a simple action for tort and inverse condemnation based upon the refusal of the City to issue a building permit of the type to which Mr. Dunstan was entitled."

The City responds that the Dunstans may not have been barred from filing a complaint sounding in tort but are clearly barred from including therein allegations challenging the validity of Petty's decisions as rendered via SEPA mandate. We agree.

As noted previously, the unchallenged conclusion of the trial court averred that the sole justification for modifying the Dunstans' building permit turned on SEPA considerations. Thus, the Dunstans could claim they were "entitled" to a building permit only by demonstrating that Petty's decision was unfounded and improper. Such could only occur through *review* of the decision–making process conducted pursuant to SEPA. The SEPA statute of limitation clearly limits the timeliness of such review and consistently has been held to reflect properly SEPA's purposes and goals. *See Citizens Interested in the Transfusion of Yesteryear v. Board of Regents,* 86 Wn.2d 323, 544 P.2d 740 (1976); *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974); *see generally* R. Anderson, *American Law of Zoning* § 25.24 (2d ed. 1977).

---

[2]RCW 43.21C.080 has since been amended to provide for a 30–day period within which the action must be commenced.

Because the Dunstans filed this action after the passing of the 60–day review period provided by the State Environmental Policy Act of 1971, the trial court's judgment is affirmed.

FARRIS and DORE, JJ., concur.

Reconsideration denied December 2, 1979.

Review denied by Supreme Court February 22, 1980.