[No. 9413–1–I. Division One. July 27, 1981.]

J & B DEVELOPMENT COMPANY, INC., *Appellant,*
v. KING COUNTY, *Respondent.*

*Short & Cressman, Douglas R. Hartwich,* and *Brian E. Lawler,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert Johns* and *Susan Agid, Deputies,* for respondent.

CALLOW, J.—J & B Development Company appeals from a decision of the Superior Court that King County is not liable for damages sustained by J & B when they were ordered to stop construction of a single family house which purportedly violated the zoning code. We hold that King County may be subject to liability for negligently administering the zoning and building codes.

J & B is engaged in the business of acquiring vacant residential property and constructing single family houses thereon for rental purposes. J & B has constructed and leased over 120 houses in King County, all of which follow the same basic design. The owners of J & B also operate a real estate agency, a building supply company, and another construction company. They are familiar with the provisions of the county's zoning and building codes.

In 1978, J & B acquired a lot in south King County that abuts South 136th Street to the north for a distance of 77 feet and 10th Avenue South to the west for a distance of

283 feet. The right-of-way for 10th Avenue South along the J & B property is only 30 feet wide, with an asphalt roadway located within the right-of-way. The right-of-way widens to 60 feet both to the north and south of J & B's lot. King County has set 48 feet as the minimum right-of-way along residential access streets such as 10th Avenue South. The existing 30-foot right-of-way was dedicated and developed many years earlier as part of an adjacent subdivision. To widen the street, land would have to be acquired from J & B's lot.

Prior to purchasing the lot, J & B shareholder William Yenter contacted the King County Building and Land Development Division and discussed the property with an unidentified county employee. Yenter learned that the lot was zoned RS-7200, single family residential, and that the previous owner had applied to short subdivide the property. A copy of the short-subdivision application and preliminary approval was furnished Yenter. The preliminary approval indicated that a condition of approval would be a dedication of an additional 18 feet of right-of-way along 10th Avenue South to make the street a full width public street.

The plot plan prepared by J & B proposed to locate the house lengthwise along South 136th Street, with all access to the house from that street. The west end of the proposed house was set back 10 feet from 10th Avenue South. J & B submitted the plot plan together with a building permit application to B. L., a permit technician for King County. As submitted, the plan failed to provide the additional setback required by King County Code 21.48.110, which provides:

A building or structure shall not be erected on a lot which abuts a street having only a portion of its required width dedicated and where no part of such dedication would normally revert to said lot if the street were vacated, unless the yards provided and maintained in connection with such building or structure have a width or depth of that portion of the lot needed to complete the road width plus the width or depth of the yards required

on the lot by this title, if any. This section applies to all zones.

Neither J & B nor B. L., the permit technician, detected any errors with the application. B. L. approved the application without observing from the official King County Kroll[1] map that the subject property had a substandard right-of-way and that an additional setback would be required along 10th Avenue South pursuant to King County Code 21.48.110.

Following issuance of the permit, J & B surveyed, excavated and leveled the property, and also placed the foundation forms. As required by the building code, J & B requested a foundation and setback inspection by the King County Building and Land Development Division. Inspector R. A. visited the lot and examined the foundation and setback. He did not detect the setback error and approved the project. Ten days later, as a result of complaints from neighboring landowners, the county discovered the error and issued a directive to stop work. J & B was ordered to relocate the house to provide an additional 18-foot setback.

J & B commenced a lawsuit challenging King County's authority to order the additional setback or, alternatively demanding compensation for the relocation of the house. The County obtained partial summary judgment upholding the constitutionality of King County Code 21.48.110. The court also held that enforcement of the setback requirement was not a compensable taking of J & B's property and that the County was not estopped from imposing the additional setback upon J & B. After a trial limited to J & B's claim of negligence, the trial court held that County employees acted without due care but nevertheless dismissed the claim on the ground that the zoning and building codes imposed no duty upon King County to act with care in the issuance of building permits or inspection of property. This appeal followed.

J & B first challenges the County's contention that King

---

[1]Kroll is a mapmaker.

County Code 21.48.110, which requires an additional set-back if a street has only a portion of its "required width" dedicated, applies to their property simply because the county's "standard road width" is 48 feet. J & B argues that by "required width," the ordinance means the width required of any particular street by the county when that street was originally dedicated, whether by condemnation, formal subdivision, or short subdivision. Since the county originally chose to require a 30–foot right–of–way along this portion of 10th Avenue South, J & B contends that the road has all of its required width dedicated.

We hold that the county's "standard road width" is analogous to a road's "required width." Affidavits submitted by the County reveal that where, as here, a street straddles a property line and the land on only one side is undergoing development, the county's practice has been to require dedication of land on only that side of the street, with King County Code 21.48.110 operating to reserve a right–of–way along the undeveloped side in order to permit widening when that property is developed. In this case, the western 30 feet of 10th Avenue South was developed over 20 years before as part of an adjacent subdivision. The lot acquired by J & B has been undeveloped since that time. King County Code 21.48.110 insures that a right–of–way will be reserved to permit widening of 10th Avenue South when circumstances warrant, and the ordinance applies to J & B's property.

Second, J & B urges us to hold that King County Code 21.48.110 is an unreasonable and unconstitutional exercise of the county's police powers. J & B points to evidence that a primary purpose of the ordinance is to hold down the expense of future road expansion and asserts that this purpose bears no substantial relation to the public health or general welfare.

The burden of establishing the invalidity of a legislative enactment rests on the party asserting its unconstitutionality. Every presumption will be indulged in favor of constitutionality, and a court will overturn a municipal

exercise of legislative authority only for manifest abuse of discretion. *Duckworth v. Bonney Lake,* 91 Wn.2d 19, 586 P.2d 860 (1978). *Duckworth* summarized the test to determine whether municipal zoning legislation meets constitutional requirements:

> Municipal zoning ordinances enacted pursuant to such statutory authority will be held constitutional as a valid exercise of the police power if they bear a substantial relation to the public health, safety, morals or general welfare. . . . Two inquiries must be made when measuring such legislative enactments against the permissible bounds of the police power.
>
> The initial inquiry is whether the legislation tends to promote the public health, safety, morals or welfare. . . . If it does, the wisdom, necessity and policy of the law are matters left exclusively to the legislative body. . . .
>
> The second inquiry is whether the legislation bears a reasonable and substantial relation to accomplishing the purpose established by the first inquiry. . . .
>
> The two inquiries cannot be made in a vacuum. The public interest to be promoted or the evil to be corrected and the relationship of the legislation to this public purpose must be determined. To this end the court necessarily engages in certain presumptions. . . . If the court can reasonably conceive of a state of facts which would warrant the legislation, those facts will be presumed to exist. Further, it will be presumed that the legislation was passed with reference to those facts. . . .

(Citations and footnote omitted.) *Duckworth v. Bonney Lake, supra* at 26–27.

The County filed affidavits with the trial court which suggested five legitimate objectives served by the ordinance: (1) promotion of automobile and pedestrian safety through better vision; (2) safer street design by widening the street along the additional right–of–way; (3) conformity with the setbacks of other houses in the area, providing open space and better visibility, light, and air; (4) reduced impact on homeowners when the county undertakes to complete the roadway; and (5) cohesion in the county road development program, permitting the street to be widened as vacant property is developed. In connection with the fifth objec-

tive, the County submitted the affidavit of Terence Brunner, a planner for the King County Building and Land Development Division. Brunner's affidavit outlined the county's policies regarding the improvement of streets as previously unused land is developed:

Implementation of this principle occurs in several ways:

a. If property is subdivided into five or more lots, the developer is usually required to build roads to King County standards and to dedicate the right of way to the county.

b. If property is subdivided into four or fewer lots, the developer will be required to do one of three things depending on the size of the development:

(1) Build roads and dedicate the right of way to King County;

(2) Merely dedicate the right of way to King County, or,

(3) Merely setback any construction a sufficient distance to allow future construction of a roadway.

c. If only a single lot is developed (as in this case), the developer will be required only to set any construction back a sufficient distance to allow future road construction.

In all cases, the basic principle is that every lot which fronts on public streets must contribute its share of the area necessary for such streets.

■ We hold that King County Code 21.48.110 serves to assure orderly road development as vacant residential property is developed. The facilitation of uniform street design promotes traffic safety and is a proper public purpose. In addition, the ordinance serves to assure that residential development will not occur until provision is made for street improvement, thus avoiding the expense, inconvenience, and disruption occasioned by the relocation or demolition of homes situated within a proposed public right–of–way. These are benefits to both the property owner and the general public. King County Code 21.48.110 bears a reasonable and substantial relation to the attainment of these goals.

■ We reject J & B's assertion that the imposition of an

additional setback constitutes an unlawful taking without compensation. Where there is a valid public purpose for the challenged regulation, no physical use or damaging of the property by the public, and the property owner is left with a reasonable use of the property, the ordinance is valid and no taking or damaging has occurred. *Maple Leaf Investors, Inc. v. Department of Ecology,* 88 Wn.2d 726, 565 P.2d 1162 (1977). The evidence is unchallenged that J & B can still build the same house on the property in question. The county is merely requiring the relocation of the house. Nor is J & B being required to dedicate the right–of–way to the county; when 10th Avenue South is widened, the needed land will be condemned and J & B fully compensated.

J & B's final contention is that King County is liable for negligently issuing the building permit and conducting a setback inspection without notifying J & B of the special setback requirement. Both parties concede that RCW 4.92-.090 and 4.96.010, the state tort claims statutes, apply in this case. *Compare Haslund v. Seattle,* 86 Wn.2d 607, 547 P.2d 1221 (1976) (holding that issuance of building permits is a ministerial function) *with Dunstan v. Seattle,* 24 Wn. App. 265, 600 P.2d 674 (1979) (suggesting that where SEPA applies, issuance of building permits becomes discretionary). King County argues that the abolition of sovereign immunity does not necessarily create a duty which gives rise to a cause of action for negligence. The County cites *Georges v. Tudor,* 16 Wn. App. 407, 556 P.2d 564 (1976), for the proposition that the duty created by zoning and building codes is a duty owed the public in general and that no duty of care is owed to individuals in the issuance of permits or permit enforcement. J & B urges us to abolish the general and special duty distinction, or, alternatively, hold that a special relationship exists between J & B and the County giving rise to a duty of care owed specifically to J & B.

Municipalities have historically been immune from liability for negligently failing to enforce their ordinances. *See, e.g., Goggin v. Seattle,* 48 Wn.2d 894, 297 P.2d 602

(1956); *Kitsap County Transp. Co. v. Seattle,* 75 Wash. 673, 135 P. 476 (1913). In 1961, the legislature enacted RCW 4.92.090, which as amended provides:

> The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation.

This statute abolished on a broad basis the doctrine of sovereign immunity, rendering state government liable for damages under orthodox tort principles as if it were a private person or corporation. *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965).

Notwithstanding this substantial change in law, a number of decisions have continued to apply the traditional rule that municipal ordinances impose duties which are owed to the public as a whole and which are not enforceable in tort by any particular individual. *See, e.g., Baerlein v. State,* 92 Wn.2d 229, 595 P.2d 930 (1979); *Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978); *Rosen v. Tacoma,* 24 Wn. App. 735, 603 P.2d 846 (1979); *Georges v. Tudor, supra.* Resort to this rule following the elimination of sovereign immunity has been harshly criticized in a growing number of jurisdictions. In *Adams v. State,* 555 P.2d 235, 241–42 (Alaska 1976), the court had this objection to the traditional rule:

> [W]e consider that the "duty to all, duty to no–one" doctrine is in reality a form of sovereign immunity, which is a matter dealt with by statute in Alaska, and not to be amplified by court–created doctrine. An application of the public duty doctrine here would result in finding no duty owed the plaintiffs or their decedents by the state, because, although they were foreseeable victims and a private defendant would have owed such a duty, no "special relationship" between the parties existed. Why should the establishment of duty become more difficult when the state is the defendant? Where there is no immunity, the state is to be treated like a private litigant. To allow the public duty doctrine to disturb this equality would create immunity where the legislature has not.

(Footnote omitted.)

 The state of Oregon's tort claims statute holds public bodies and their employees liable for their torts just as any private individual or corporation would be liable. Or. Rev. Stat. § 30.265. *Brennen v. Eugene,* 285 Or. 401, 591 P.2d 719 (1979), noted that common law tort principles define the scope of a duty in terms of "foreseeability" and that this rule applies to municipalities as well as private individuals.

> The agent had an employment responsibility to process license applications pursuant to the requirements of the ordinance. Under general principles of common law negligence, the agent was required to perform this duty so as to avoid creating a foreseeable risk of harm to others.
>
> Defendant argues that no duty whatsoever can exist because in enacting the ordinance defendant did not intend to become the insurer of all its citizens. This argument misconceives the source of the licensing agent's duty to act with reasonable care. The responsibility to perform the act may arise from the ordinance, but the duty to perform the act *with reasonable care* arises from principles of common law negligence. It is immaterial whether or not the licensing agent intended to assume a duty in this case, just as it would be immaterial whether or not a private individual intended to assume a duty in doing a particular act. Virtually all government activities have their ultimate source in some legislative enactment, and to adopt defendant's theory would, in effect, restore the doctrine of sovereign immunity, which has been abolished by statute in Oregon. ORS 30.265.

*Brennen v. Eugene, supra* at 407. *See also Wilson v. Nepstad,* 282 N.W.2d 664 (Iowa 1979); *Coffey v. Milwaukee,* 74 Wis. 2d 526, 247 N.W.2d 132 (1976); *Dykeman v. State,* 39 Or. App. 629, 593 P.2d 1183 (1979) (imposing a duty upon municipalities to take reasonable care in processing building permit applications to avoid foreseeable risk of injury occasioned by issuance of permits which are later revoked).

We agree. A duty owed to the public generally is also a duty owed to individual members of the public. In authorizing sovereign tort liability, the legislature intended to

subject municipalities to the same orthodox negligence principles that individuals and corporations are subject to. *Edgar v. State,* 92 Wn.2d 217, 595 P.2d 534 (1979); *Evangelical United Brethren Church v. State, supra.* The county issues building permits, inspects for compliance and is aware that permit holders will proceed in reliance on the permits issued. The county has a common law duty to exercise reasonable care to avoid foreseeable risks of harm under such circumstances.

The cases in Washington finding a general duty to all, but unenforceable by individuals, invariably point to one of several exceptions thereto. These exceptions generally embody negligence principles and reflect the tension which exists between the law abolishing sovereign immunity and the court rule which preserves it. Both *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975), and *Georges v. Tudor, supra,* recognize an exception to the traditional rule by imposing liability where a special relationship exists or had developed between an injured plaintiff and agents of a municipality creating a duty to perform a mandated act for the benefit of particular persons or class of persons. This exception reiterates that when an individual undertakes to perform a service for another, that individual must use reasonable care for the protection of the other's interests. *See Dyer v. Missouri State Life Ins. Co.,* 132 Wash. 378, 232 P. 346 (1925); W. Prosser, *Torts* § 56 (4th ed. 1971). A similar duty, arising where one undertakes to aid another in peril, has been applied to agents of the government. *Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975).

*Halvorson v. Dahl, supra,* announced another "exception" to the traditional rule where a municipal code by its terms evidences a clear intent to identify and protect a particular and circumscribed class of persons. This holding is primarily a restatement of the doctrine that common law duties may be imposed or abolished by statute. *See, e.g., Baerlein v. State, supra* (duties may be imposed by statute upon governmental entity); *Herberg v. Swartz,* 89 Wn.2d 916, 578 P.2d 17 (1978) (statutory duties may supersede

common law duties); *Callan v. O'Neil,* 20 Wn. App. 32, 578 P.2d 890 (1978).

In *Rogers v. Toppenish,* 23 Wn. App. 554, 596 P.2d 1096 (1979), the court imposed a duty of due care upon agents of a municipality to render accurate zoning information upon request of the public. The court quoted from Restatement (Second) of Torts § 552(3) (1977) as follows:

> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Rogers v. Toppenish, supra* at 561, and held that there was justifiable reliance by an injured permittee upon a building inspector and tort liability may arise where such an administrator negligently issues a building permit.

In *Industrial Hydraulics v. Aberdeen,* 27 Wn. App. 123, 619 P.2d 980 (1980), the court held that a permit issued under a mistake of fact or in violation of law gives the permittee no vested rights and is revocable, but stated also that the issuance of the building permit and its later revocation was not the proximate cause of the plaintiff's injury. Since all elements of a tort claim must be proved before liability is established, this result would have followed had the court imposed a duty of due care. The court commented on *Rogers v. Toppenish,* saying that its narrow ruling was that a municipality is liable for harm resulting from failure to correctly answer an inquiry from a justifiably relying applicant. The court stated:

> By contrast, the partnership in the present case submitted an application containing certain construction plans which failed to conform to the City's zoning regulations. The partnership made no specific inquiry concerning the nonconforming plans, and the building inspector simply missed the nonconformity in issuing a permit to the partnership. Under *Eastlake [Community Council v. Roanoke Assocs., Inc.,* 82 Wn.2d 475, 513 P.2d 36, 76 A.L.R.3d 360 (1973)] "no rights may vest where either the application submitted or the permit issued fails to

conform to the zoning or building regulations." 82 Wn.2d at 481.

*Industrial Hydraulics v. Aberdeen, supra* at 126.

We find no justification for a distinction that imposes liability where an individual makes a specific inquiry on a zoning or building code matter and is negligently misinformed; and denies liability where an applicant submits an application to an inspector, a building permit is issued indicating zoning and code compliance, and the applicant is damaged when he proceeds with construction, relying on the permit's approval.

A number of jurisdictions have held that a municipality is estopped from revoking a building permit when an official, acting within the scope of his authority, has issued a permit by mistake. The elements that must be established are (1) the applicant–party must lack knowledge and the means of knowledge of the defect in the application and the subsequently issued permit; (2) the applicant–party must rely on the approval of the project as reflected by the imprimatur of the permit; (3) the applicant–party must change his position to his prejudice in reliance on the permit. *See* and *compare Pioneer Trust & Sav. Bank v. County of Cook,* 71 Ill. 2d 510, 377 N.E.2d 21 (1978); *Key Petroleum, Inc. v. Housing Auth.,* 357 So. 2d 920 (Miss. 1977); *Abbeville Arms v. Abbeville,* 273 S.C. 491, 257 S.E.2d 716 (1979); *Peru v. Querciagrossa,* 73 Ill. App. 3d 1040, 392 N.E.2d 778 (1979); *Dykeman v. State,* 39 Or. App. 629, 593 P.2d 1183 (1979). The elements of estoppel have been established here.

The issuance of a building permit should not vest rights which can be exercised against the public interest but a change in position made in justifiable reliance upon the approval of the building permit should give rise to a right to recover damages suffered. We hold that a building inspector may not issue a building permit without exercising due care to see that the permittee's plans and specifications comply with the applicable codes and ordinances and, when the permittee has acted in reliance on the permit

issued, disclaim all liability and responsibility for the permittee's plight.

The approach of many courts, in finding a municipality estopped by its actions from denying liability, has been to forbid the revocation of the building permit and to permit the continuance of construction. We see no reason to punish the public in this manner by permitting construction which is either dangerous or inimical to the general welfare. It would be detrimental to the neighborhood and to the public to allow the construction of a building which would block the future widening of a street when the need to do so in the future reasonably can be foreseen. This does not mean, however, that the permittee has no recourse for the damage inflicted upon him. Nor does it mean that officials and building inspectors can approach their duties frivolously, knowing that even if they are careless and sloppy in the performance of their work that they will not be held to answer for their actions and the municipality can be indifferent to the injury inflicted.

The permittees in such situations should be entitled to damages for the losses caused by the municipality's negligence, reduced by the percentage of the permittee's own contributory negligence. *See King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974).

We hold that King County owed to J & B a duty to process the building permit application with due care. The county's agents were required to perform this task so as to avoid creating a foreseeable risk of harm to the permit holder. In unchallenged findings of fact, the trial court found that county employees B.L. and R.A. were charged with knowing the requirements of the King County zoning and building codes and that B.L.'s failure to detect the setback requirement before issuing the building permit constituted a lack of due care.

Inasmuch as there have been no findings as to proximate causation, damages, and comparative negligence,[2] the mat-

---

[2]*See* WPI 30.02, .03.

ter must be remanded for trial on those issues. The judgment of the trial court is reversed and the cause remanded for proceedings consistent herewith.

SWANSON, J., concurs.
WILLIAMS, J., concurs in the result.

Reconsideration denied October 20, 1981.

Review granted by Supreme Court February 5, 1982.