438 So.2d 490 (1983)
The MANORS OF INVERRARY XII CONDOMINIUM ASSOCIATION, INC., Appellant,
v.
ATRECO-FLORIDA, INC., City of Lauderhill, Florida, et al., Appellees.
No. 81-138.
District Court of Appeal of Florida, Fourth District.
September 28, 1983.
*491 Robert J. Manne of Becker, Poliakoff & Streitfeld, P.A., Fort Lauderdale, for appellant.
Joseph S. Kashi of Conrad, Scherer & James, Fort Lauderdale, for appellee City of Lauderhill.
DOWNEY, Judge.
The issue involved in this appeal is whether the doctrine of governmental immunity protects a municipality from liability for the negligence of its building inspector in approving plans, specifications and construction which do not meet the requirements of the applicable building code. The trial court dismissed the complaint against the City, appellee states, on the ground of sovereign immunity.
Appellant, a condominium association, filed this class action on behalf of its unit owners pursuant to Rule 1.221, Fla.R.Civ.P., against the developer, general contractor, architect and the City of Lauderhill. While the complaint alleges numerous defects in the construction Count III of the amended complaint against the City alleged that the City was negligent in failing to properly examine the plans and specifications and properly inspect the premises before issuing a building permit and certificate of occupancy. As a result, it is alleged, the improvements fail to meet the requirements of the South Florida Building Code in numerous respects. The City's motion to dismiss on the ground that it was entitled to sovereign immunity because the enforcement of the building code is a discretionary function was granted. From a final judgment dismissing the City, appellant has perfected this appeal. We reiterate that the sole question argued on appeal is whether the activities of a city building inspector in approving plans, specifications and construction is discretionary planning activity or operational activity.
The building code in effect in the City of Lauderhill is the South Florida Building Code adopted by special act of the legislature for Broward County in Chapter 71-575, Laws of Florida. The code provides that application for a building permit must be accompanied by two sets of plans for the proposed improvement. The Building Official is then required to examine the plans to determine their compliance with the building code. If they comply, he issues a building permit; if not, the plans are rejected. After issuance of a permit, the code requires periodic inspections. If the construction meets code requirements and is approved a certificate of occupancy is ultimately issued. Appellant contends the City Building Official approved plans and specifications which did not meet code requirements and that he approved on-site construction which also violated the code.
Appellant's position is that the City is liable for its negligence in not requiring compliance with the building code because the enforcement of the code is an operational activity. The City, on the other hand, argues that the Building Official's function is discretionary and part of his planning activity and thus remains cloaked with sovereign immunity. The planning-operational dichotomy was introduced into the jurisprudence of this state in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979) and now controls the determination of which governmental functions are still protected by sovereign immunity and which are not pursuant to the waiver provisions of Section 768.28, Florida Statutes (1981).
We agree with appellant that when the City decided to employ the South Florida Building Code as its standard for construction, it was engaged in discretionary or *492 planning activity. The examination of plans and specifications for the issuance of a building permit and on-site inspections to determine compliance with code requirements prior to issuance of the certificate of occupancy are operational activities. We reach that determination by applying the Commercial Carrier four-prong test adopted from Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965). Without exploring all facets of appellee's argument, suffice it to say that we are in accord with the recent decision of the Third District Court of Appeal in Trianon Park Condominium Association v. City of Hialeah, 423 So.2d 911 (Fla. 3d DCA 1982). Virtually all of appellee's arguments were adequately answered in that case (which decision was filed after the rendition of the judgment in this case).
Perceiving the question involved in this case to be one of great public importance, we certify the following question to the Supreme Court of Florida:
Should the negligent conduct of a building inspector in approving plans, specifications, and construction that do not meet the requirements of the applicable building code be considered "operational" conduct for which the municipality may be held liable in damages or "discretionary" conduct to which sovereign immunity would apply?
Accordingly, the judgment appealed from is reversed and the cause is remanded for further proceedings.
GLICKSTEIN, J., concurs specially with opinion.
ANSTEAD, C.J., dissents with opinion.
GLICKSTEIN, Judge, concurring specially.
In concurring specially, I analogize to federal cases including the recently decided Block v. Neal, ___ U.S. ___, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). There a borrower sued the Farm Home Administration (FmHA) under the Federal Tort Claims Act (FTCA) to recover for construction defects in the home she purchased with an FmHA loan. Under her contract with the builder, the work was to conform to plans approved by FmHA, and FmHA had the right to inspect and test all materials and workmanship and reject any that were defective. An FmHA official inspected both during and at completion of construction, and reported compliance with the FmHA approved drawings and specifications. When the borrower discovered, and FmHA verified, certain defects, the builder refused to correct them under his warranty, and FmHA declined to pay for the defects. The borrower's suit was bottomed on a theory that the defects were partly attributable to FmHA's employee's inadequate inspection and supervision of construction. The Supreme Court affirmed a Court of Appeals holding that the complaint was not barred by the FTCA statutory exception which precludes recovery for a claim arising out of misrepresentation. Of particular significance to the instant case is the United States Supreme Court's implied imprimatur on the following reasoning of the Court of Appeals:
The Court of Appeals ... agreed with the District Court that FmHA had no contractual obligation to provide Neal with technical assistance or to inspect and supervise construction of her house... . [but] found that respondent's complaint stated a claim for negligence under the principle "that one who undertakes to act, even though gratuitously, is required to act carefully and with the exercise of due care and will be liable for injuries proximately caused by failure to use such care." ... Restatement (Second) of Torts § 323 (1965). It noted that, subject to express exceptions, the Tort Claims Act, 28 U.S.C. § 2674, authorizes suit against the Government for the negligence of a federal agency in performing a voluntary undertaking.
___ U.S. at ___, 103 S.Ct. at 1092, 75 L.Ed.2d at 72. (citations to Court of Appeals opinion deleted) (footnote omitted). The Supreme Court's decision in Neal affirmatively held only that the government's argument for the misrepresentation exception *493 under the FTCA could not stand. The court did not state that Neal's negligence claim lies. However, the opinion implies that if, in the jurisdiction in which the events of Neal occurred, the Good Samaritan doctrine of § 323 of the Restatement (Second) of Torts is recognized and is applicable against a private defendant, a like cause of action could be raised against a federal agency. See id. 103 S.Ct. at 1092 and n. 3. This proviso accords with the core provision of the FTCA.
The history of the doctrine of sovereign immunity and of its gradual erosion impels me to believe that Neal and the members of The Manors of Inverrary XII Condominium Association, who are in the same boat, are entitled to seek the same relief. Although sovereign immunity may have originated in Roman law, more likely it stems from the theory of the divine right of kings promoted by Henry VIII to justify his split from the Roman Church and from his many wives. Why a doctrine derived from the idea that a king can do no wrong came to be the law in our democratic republic is an enigma. The rationale, of course, is that the government, whether monarchical or representative, is the sovereign. When the Supreme Court attempted to interfere with the sovereign immunity of the States, Chisholm v. Georgia, 2 U.S. 419, 1 L.Ed. 440 (1793), Congress and the States responded by adopting the Eleventh Amendment, which permits no private citizen suit against a state in federal court without the state's consent. And in Cohens v. Virginia, 19 U.S. 264, 5 L.Ed. 257 (1821), Chief Justice Marshall discovered that no suit could be undertaken against the United States without its consent.
It is even harder to see why American municipalities were found at common law to have governmental immunity. No one claims that cities or counties are sovereign. Moreover, governmental immunity of municipalities never saw the light of day in Great Britain until a decade after the United States Constitution had been ratified. See Russell v. Men of Devon, 2 Term Rep. 667, 100 Eng.Rep. 359 (1798). Be that as it may, our common law came to hold that, because municipalities have dual roles as governments and corporations, when they exercised public powers they shared the State's immunity as delegatees of the State, but when they exercised proprietary powers comparable to those of other corporations or private persons they could be liable.
The federal government led the way in cutting back sovereign immunity, by whittling down its own. Legislation permitting contract claims against the United States came first. Then, in 1946, the United States waived its immunity from tort liability by adopting the FTCA, 28 U.S.C. §§ 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671-2680 (1976). With several stated exceptions, the FTCA makes the federal government liable for the negligent or wrongful acts or omissions of federal employees, when within the scope of their employment, "in the same manner and to the same extent as a private individual under like circumstances," § 1346(b), according to the law of the local jurisdiction where the tort occurs, § 2674. Chief among the exceptions to this general rule are combat activities of the armed forces during belligerency, § 2680(j); "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," § 2680(h); and:
Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused.
28 U.S.C. § 2680(a).
In federal case law, where issuance of permits, licenses and the like is involved, whether the discretionary function exception will apply has come to turn on whether the alleged negligence occurred at the planning or the operational level of the particular *494 governmental activity. In Hendry v. United States, 418 F.2d 774 (2d Cir.1969), the court of appeals postulated a three-pronged test. The first question to be asked is "whether the complaint attacks on the one hand the nature of rules which a governmental agency has formulated, or on the other hand the way in which these rules are applied." Id. at 782. Following Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the court of appeals stated governmental immunity applies to executive and administrative decisions "which either establish a rule for future governmental behavior or constitute an ad hoc determination which neither applied an existing rule nor establishes one for future cases." 418 F.2d at 783. On the other hand, a decision which applies an existing rule to the facts of a case is subject to suit provided the administrative official did not have to make policy decisions in order to reach his conclusion. Id.
To help draw the line between decisions that are immune to suit and those that are not, two further questions may be asked. Thus, the second question in the three-pronged test is, Can state law standards adequately evaluate the course of action contemplated by the governmental statute or regulation under which the administrative official acted; that is, did the decision-maker look only to established professional standards or to standards of general reasonableness, or did he necessarily look also to considerations of public policy? Id. The final question is, Did the decision raise questions which are political and nonjusticiable in nature? Id.
A number of federal cases besides Hendry have held that where a statute or regulation set a clear standard for issuing a particular permit, license or similar document, the decision made was operational rather at the planning level, and therefore not protected by the discretionary function exception. E.g., Hoffman v. United States, 398 F. Supp. 530 (D.Mich. 1975) (Federal Aviation Administration official had granted operating certificate to air carrier that lacked regulation-required Civil Aeronautics Board "economic authority," i.e., adequate liability insurance; court denied the government summary judgment); Duncan v. United States, 355 F. Supp. 1167 (D.D.C. 1973) (airline pilot whose airman's medical certificate had been revoked could sue; discretionary function exception inapplicable).
Governmental immunity is a creature of the courts. The FTCA was Congress' contribution to cutting back federal governmental immunity. The Florida Supreme Court was probably the first of the highest courts of the states to tighten the limits on the governmental immunity of municipalities. See Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957). It would be incongruous, given this historic leadership, for Florida courts to read into Florida's broadly written statute abrogating sovereign immunity, Section 168.28, Florida Statutes (1981), a broader residual immunity for municipalities than the federal courts have found in the discretionary function exception expressly written into the FTCA.
In the instant case, I would adopt the standard of Hendry and the pertinent reasoning of the court of appeals in Neal, and come to the same result as Judge Downey. While the test enounced in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965) and quoted by our highest court in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979) touches to an extent on similar points, I find the Hendry test more straightforward and easier to apply.
Applying the law to the facts of the case sub judice, I find that while the City of Lauderhill engaged in a discretionary, planning activity when it adopted the South Florida Building Code as its standard of construction, the officer who examined plans and specifications preparatory to issuing a building permit and who inspected the premises and issued a certificate of occupancy thereupon had clear professional and/or reasonable standards to apply and did not need to look to considerations of public policy in order to make his decisions. Neither was any political and nonjusticiable question involved in that officer's decision. *495 Accordingly the decisions were operational and open to attack by a suit. If the building inspector was negligent in taking these actions, the City should be liable on the basis that it knew or reasonably should have known that real property buyers would rely on the outcomes of its inspector's decisions.
From the State of Washington, which gave us the Evangelical United Brethren test, have come recent decisions that recognize there may arise a duty of care to an injured plaintiff in building inspection cases even though the primary duty is to the public at large. Otherwise a duty to all may in effect become a duty to none. Thus in J & B Development Co. v. King County, 29 Wash. App. 942, 951-52, 631 P.2d 1002, 1008 (Wash. App. 1981) the court wrote:
A duty owed to the public generally is also a duty owed to individual members of the public. In authorizing sovereign tort liability, the legislature intended to subject municipalities to the same orthodox negligence principles that individuals and corporations are subject to. Edgar v. State, 92 Wash.2d 217, 595 P.2d 534 (1979); Evangelical United Brethren Church v. State, supra. The county issues building permits, inspects for compliance and is aware that permit holders will proceed in reliance on the permits issued. The county has a common law duty to exercise reasonable care to avoid foreseeable risks of harm under such circumstances.
and:
We hold that a building inspector may not issue a building permit without exercising due care to see that the permittee's plans and specifications comply with the applicable codes and ordinances and, when the permittee has acted in reliance on the permit issued, disclaim all liability and responsibility for the permittee's plight.
Id. at 955, 631 P.2d at 1010.
And, in an earlier case a Washington appellate court had written:
While we adhere to the general rule that negligent performance of a governmental police power duty enacted for the benefit of the general public imposes no municipal liability running to individual members of the public, we also recognize a general exception to the rule that where a relationship exists or has developed between an injured plaintiff and agents of the municipality created a duty to perform a mandated act for the benefit of particular persons or class of persons, then tort liability may arise.
Georges v. Tudor, 16 Wash. App. 407, 410, 556 P.2d 564, 567 (Wash. App. 1976).
A line of New York cases has similar results. See, e.g., Weese v. Village of Medina, New York, 83 A.D.2d 989, 443 N.Y.S.2d 529 (N.Y. App. Div. 1981) ("Although a municipality may not be required to provide a function merely because it was requested, once it voluntarily undertakes such function with the intent of completing it, the municipality must act with reasonable care."); Gordon v. Holt, 65 A.D.2d 344, 412 N.Y.S.2d 534 (N.Y. App. Div. 1979) (Buyer who relied on certificate of compliance issued to vendor in spite of violations had cause of action against municipality for loss due to fire, but municipality had no duty to insurer of tenants, nor to tenants who suffered loss); Sexstone v. City of Rochester, 32 A.D.2d 737, 301 N.Y.S.2d 887 (N.Y. App. Div. 1969) (City issuing certificate of occupancy for building with violations liable to buyer for cost of violation corrections; city should have known purchaser would rely).
Because duty is always an element of negligent torts, see Palsgraf v. Long Island Railroad Co., 248 N.Y. 339, 162 N.E. 99 (1928); Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 174 N.E. 441 (1931), and because Section 768.28(5), Florida Statutes, sets monetary limits on damages for which the state or its subdivision may be held liable, there need be no fear that my approach will open municipalities to a flood of claims.
ANSTEAD, Chief Judge, dissenting:
By our holding today we have made governmental units virtual insurers of the quality of construction of private development *496 projects. I do not believe that this was the intent of the legislature in abrogating the defense of sovereign immunity. Furthermore, even if it is conceded that our supreme court in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), has specifically overruled its prior decision in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967), barring governmental liability for negligent building inspectors, I do not believe such liability extends to the circumstances presented here.
Initially I must note my belief that the Supreme Court's opinion in Commercial Carrier was erroneous in characterizing the decision in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967) as one predicated on sovereign immunity:
First, we believe it to be circuitous reasoning to conclude that no cause of action exists for a negligent act or omission by an agent of the state or its political subdivisions where the duty breached is said to be owed to the public at large but not to any particular person. This is the "general duty"  "special duty" dichotomy emanating from Modlin, supra. By less kind commentators, it has been characterized as a theory which results in a duty to none where there is a duty to all. Regardless, it is clear that the Modlin doctrine is a function of municipal sovereign immunity and not a traditional negligence concept which has meaning apart from the governmental setting. Accordingly, its efficacy is dependent on the continuing vitality of the doctrine of sovereign immunity. If this be so, does the Modlin doctrine survive notwithstanding the enactment of section 768.28? We think not.
Commercial Carrier, at 1015. The Modlin opinion itself denied this characterization of its holding:
Returning now to the merits of the case at hand, it follows that if the respondent city is to escape liability, it will have to be other than by the path of municipal tort immunity.
Modlin, at 74. The Modlin decision was predicated on the lack of a specific duty owed to the plaintiff by the public official involved, a building inspector, the violation of which would give rise to tort liability:
[Modlin] merely holds that a municipal corporation is not liable in tort for the negligence of one of its employees in the absence of a duty of due care owed by the municipality to the plaintiff which is something more than the duty a public officer owes the public generally. That is no more than re-stating traditional negligence law in a governmental tort liability context.
Cheney v. Dade County, 353 So.2d 623, 629 (Fla. 3d DCA 1977) (Hubbart, J., dissenting).
Section 768.28, Florida Statutes (1975), simply waived the defense of sovereign immunity for the state, its agencies and subdivisions. There must still be a duty owed, a duty violated, and damages resulting therefrom, in order for there to be tort liability on the part of the government. Modlin simply holds that in the case of government building inspections there is no duty owed, the breach of which would give rise to tort liability. Other jurisdictions have so construed similar statutes. For example the Minnesota Supreme Court has held:
However, these statutory provisions merely removed the defense of immunity. They did not create any new liability for a municipality. In order to recover against the city, appellants must show a breach of some duty owed them in their individual capacities and not merely a breach of some obligation owed the general public.
The purpose of a building code is to protect the public. This is well stated in 7 McQuillin, Municipal Corporations (3 ed.) § 24.507, p. 523:
"* * * The enactment and enforcement of building codes and ordinances constitute a governmental function. The primary purpose of such codes and ordinances is to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the *497 health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals."
Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes. The charge for building permits is to offset expenses incurred by the city in promoting this public interest and is in no way an insurance premium which makes the city liable for each item of defective construction in the premises.
Hoffert v. Owatonna Inn Towne Motel, Inc., 199 N.W.2d 158 (Minn. 1972). Other jurisdictions, including the State of Washington, have reached the same conclusion. See Georges v. Tudor, 556 P.2d 564 (Wash. App. 1976). Cf. Halvorson v. Dahl, 89 Wash.2d 673, 574 P.2d 1190 (1978).[1]
The state of the law in Florida at the time the legislature abolished the defense of sovereign immunity was, pursuant to the Modlin decision, that there was no responsibility, in the case of public officials such as building inspectors, that would give rise to liability. This absence of responsibility did not rest on the defense of sovereign immunity. If that is correct then it should be apparent that the legislature, by abolishing the defense, did not intend to create a legal duty that did not then exist. The legislature simply left the case law on this issue intact.
Of course, rightly or wrongly, the Supreme Court in Commercial Carrier did reject Modlin so that it is reasonable to conclude that governmental units are now liable for the negligence of their building inspectors. Jurisdictions that have extended liability to such situations have done so on the theory that one who voluntarily undertakes to inspect is thereafter charged with a duty to do so with reasonable care. For instance, federal authorities have held that the government is liable, under California tort law, for the negligent inspection and certification of airplanes.
The United States, through the F.A.A., has voluntarily undertaken the inspection and certification of all civilian aircraft. The Federal Aviation Act of 1958, 49 U.S.C. § 1301, et seq., requires the F.A.A. "to promote safety of flight of civil aircraft in air commerce" and to perform its duties "in such manner as will best tend to reduce or eliminate the possibility, or recurrence of accidents in air transportation... ." 49 U.S.C. § 1421. The Act provides for a mandatory certification procedure, 49 U.S.C. § 1423, and the F.A.A. has established design criteria that every aircraft must meet before being certified for flight.
Members of the flying public may not know the specific contents of F.A.A. regulations. There is general knowledge, however, that regulations designed to insure optimum safety exist and that the United States inspects each aircraft for compliance. The public knows that the government "grounds" aircraft until questions about safety are resolved. The United States should expect that members of the public will rely on the proper performance by the F.A.A. of its duty to inspect and certify. Under California law, a private person inspecting and certifying aircraft for airworthiness would be liable for negligent inspection under that state's good samaritan rule. It follows that the United States also falls within the rule. Even without reference to the good samaritan rule, we have indicated that an action against the government will lie in a negligent inspection and certification case. Arney v. United States, 479 F.2d 653, 661 (9th Cir.1973).

*498 The United States contends that if it comes under this rule it will be liable for every accident resulting from an activity subject to government safety regulations. This argument is not persuasive. The United States will be liable only when injury has resulted from the negligent performance of its duty. The voluntary assumption of the inspection and certification function carries with it the duty to inspect and certify with reasonable care.
S.A. Empresa de Viacao Aerea Rio Grandense v. United States, 692 F.2d 1205 (9th Cir.1982). The extension of liability for negligent inspection is clearly predicated on a need to insure public safety. Although the need may be more acute and the governmental role more prominent in the case of air transportation, most building codes also are predicated in large part upon concerns for public safety.[2] However, even if a member of the public may sue for injuries suffered as a consequence of defective construction that would have been detected by a reasonable inspection, does this also mean that building owners and purchasers may require the government to pay for repairs or improvements needed to bring a building up to code requirements?
It has been held that a lender who undertakes the responsibility to inspect a construction project for its own benefit, and charges the borrower-developer a fee for such inspection, is not liable to the borrower-developer for any failure by the inspector to observe deficiencies in the construction. Rice v. First Federal Savings & Loan Ass'n of Lake County, 207 So.2d 22 (Fla. 2d DCA 1968). Similarly, I do not believe a governmental body that conducts inspections for its own benefit and the benefit of its citizens, owes any duty to the building owner to see that such inspections are properly conducted. Indeed, it is the building owner who has the obligation to see to it that his building is constructed in accordance with the governmental building code. To effect such compliance the owner usually hires a contractor, architect or engineer, to whom, in turn, the owner can look if the building is not properly constructed. This responsibility of the owner to build in compliance with the building code is completely negated if the owner is subsequently allowed to look to the government to guarantee compliance by the owner's agents, i.e. the contractor, architect or engineer, with the code. This example is only one step removed from the factual situation presented herein, where we have purchasers of newly constructed premises seeking financial relief from the government for defects in the construction created by the prior owner and his agents. In my view the purchasers' relief should be limited to an action against the prior owner and his agents. Cf. Conklin v. Hurley, 428 So.2d 654 (Fla. 1983).
Such a holding is not precluded by the supreme court's holding in Commercial Carrier rejecting Modlin. Since building codes are primarily enacted for reasons of public safety, any liability predicated on the negligent failure to enforce the building code should be limited to injuries suffered by members of the public. The building codes should not be used as a means for developers or building purchasers to extract a financial guaranty from the government to the quality of the building they erect or purchase. In other words, even the public safety rationale that may support the extension of liability of governments for negligent inspections simply does not apply to situations where the relief sought is the repair of the defective premises.
It appears that the decision in Commercial Carrier, rather than clarifying the law, has produced the same sort of confusion that the Commercial Carrier opinion concludes existed prior to the legislative abrogation of sovereign tort immunity. The "discretionary" or "planning level" exception adopted by Commercial Carrier has *499 already proven unworkable, as is evidenced by the Supreme Court's recent trilogy of opinions in this area written by a justice who dissented in Commercial Carrier, and to which opinions the author of the majority opinion in Commercial Carrier has dissented, declaring that the confusion in this area of the law had now been compounded by the more recent opinions.[3]
After Commercial Carrier, and its rejection of Modlin, courts have appeared to lose sight of the requirement of the existence of a duty in considering liability, and have, instead, directed most of their attention to the difficult task of determining whether the action involved was "discretionary" or "operational" in accord with the nebulous standard set out in the case of Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965), and adopted in Commercial Carrier.
Absent some reconsideration by the supreme court, the legislature, while there are still some members around who are aware of their intent in enacting section 768.28, should act to clarify its intent in passing this legislation. I would be surprised to learn that the legislature intended to make governmental bodies responsible for repairs to buildings to bring them up to building code compliance or to incorporate the case law of the State of Washington as enunciated in 1965 as the controlling law for the State of Florida. In any event, state and local governmental bodies are entitled to a clearer statement of their potential liabilities than is presently being provided in the case by case application of the Washington decision.
NOTES
[1] In Halvorson the Washington Supreme Court recognized an exception to this general rule of non-liability where a statutory provision "evidences a clear intent to identify and protect a particular and circumscribed class of persons." Id. 574 P.2d at 1192.
[2] Arguably, the airplane inspection and certification cases could be placed in the category of the same exception to the general rule discussed in footnote I of this opinion. For examples of cases rejecting the Modlin view and holding the government liable for negligent building inspections see Coffey v. City of Milwaukee, 74 Wis.2d 526, 247 N.W.2d 132 (1976) and Adams v. Alaska, 555 P.2d 235 (Alaska 1976).
[3] State Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982); and Ingham v. State Department of Transportation, 419 So.2d 1081 (Fla. 1982). Also see our recent decision in Elliot v. City of Hollywood, 399 So.2d 507 (Fla. 4th DCA 1981), in which we held that a municipality could not be held liable for its failure to enforce an ordinance limiting the height of hedges and bushes; and Everton v. Willard, 426 So.2d 996 (Fla. 2d DCA 1983), wherein it was held that governmental bodies are not liable for the failure of police officers to arrest motorists who are observed by the police to be intoxicated and who later are involved in accidents causing substantial personal injuries to third parties.