[No. 3416-1.    Division One.    November 22, 1976.]

JOHANNA GEORGES, ET AL, *Plaintiffs*, v. BURL TUDOR, ET AL, *Appellants*, THE CITY OF SEATTLE, ET AL, *Respondents*.

---

*Hullin, Roberts, Mines, Fite & Riveland* and *William P. Fite,* for appellants.

*John P. Harris, Corporation Counsel,* and *J. Roger Nowell, Assistant,* for respondents.

SWANSON, J.—On the evening of March 22, 1972, the Olympic Block Building, located in the Pioneer Square area of Seattle and under extensive renovation by Burl Tudor, collapsed. As a result, legal actions were commenced by various parties having leasehold or ownership interests in the building. The primary defendant in these actions was Burl Tudor. Tudor in turn cross claimed against the City of Seattle for damages and for indemnity on the multiple claims against him.

The City of Seattle moved for a partial summary judgment on Tudor's claim that the City was negligent in issuing a building permit and in inspecting the premises. The trial court entered its order granting the motion on September 19, 1974, nunc pro tunc, effective July 8, 1974.[1] Thereafter, trial of the consolidated actions proceeded pursuant to an order of bifurcation with the damage phase following the liability phase. The jury returned a defense verdict on the issue of liability in favor of the City on Tudor's cross claim and also found liability in favor of several plaintiffs, who are not involved in this appeal, as against defendant Tudor.

Tudor now appeals from the dismissal of his cross claim against the City of Seattle and assigns error (1) to the granting of the City's motion for partial summary judgment and (2) to the giving of instruction No. 21-B.

We deal first with appellant's assignment of error relating to the granting of the City's motion for partial summary judgment. Appellant, as previously stated,

[1] The trial itself commenced on July 8, 1974, and proceeded through July 30, 1974.

grounded his claim against the City in tort—more specifically, negligence. In order to recover in negligence against a municipal government, appellant must prove all the elements of his tort, including the existence of a duty owed to him, breach of that duty, causation, and damages. Of all the traditional negligence elements to be proved, the most pivotal is whether, in the instant case, a duty is owed by the City to Mr. Tudor. *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975); *Sigurdson v. Seattle*, 48 Wn.2d 155, 292 P.2d 214 (1956). In answering this question, we note that the enactment of building codes providing for the issuance of building permits is one of a variety of services performed by a municipality for the benefit of its citizens. The enforcement of the building code through the periodic inspection of buildings is, again, a service provided to the citizens of a city in order to achieve compliance with building codes, zoning laws, and safety ordinances. *See* 9 E. McQuillin, *Municipal Corporations* § 26.200 (3d rev. ed. 1964). The general purpose of building codes, building permits, and building inspection is, therefore, to protect the public and not to insure that each building is constructed in complete compliance with building codes and ordinances. As a result, in order to recover against the City, appellant must show more than a mere breach of an obligation owed to the general public, but, rather, he must establish a breach of duty owed to him individually.

Although our Supreme Court has not decided whether a city owes any duty to a permittee under circumstances similar to those presently before us, other courts have entertained the question. In *Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 199 N.W.2d 158 (1972), a case involving negligent building inspection, the court held that a building inspector acts exclusively for the benefit of the public, that the act performed is only for the public benefit, and that an individual who is injured by the alleged negligent performance of a building inspector does not have a cause of action. The Arizona appellate court in *Duran v. Tucson*, 20 Ariz. App. 22, 509 P.2d 1059 (1973), found that

the city owed only a general duty to inspect for violations of the fire code. In the *Duran* case, the plaintiff was severely burned when gasoline fumes were ignited by an open flame heater. The city had on several occasions inspected the premises and, in violation of the city's own fire codes, negligently failed to instruct the owner on the possible fire hazard.[2] The court reasoned that the inspections mandated by a fire code were analogous to inspections under a building code and that neither was for the benefit of any one individual. Other courts have reached similar conclusions regarding the duty issue. *Leger v. Kelley*, 19 Conn. Supp. 167, 110 A.2d 635 (Super. Ct. 1954), *aff'd*, 142 Conn. 585, 116 A.2d 429 (1955); *Modlin v. Miami Beach*, 201 So. 2d 70 (Fla. 1967); *Motyka v. Amsterdam*, 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635 (1965).

We agree with the decisions cited and hold that the City owed no duty to appellant individually in issuing the building permit or in inspecting the Olympic Block Building. To hold otherwise would cause the City to become a guarantor of each and every construction project—a task not only beyond the scope of the building codes as enacted, but also one that the City is incapable of performing. While we adhere to the general rule that negligent performance of a governmental police power duty enacted for the benefit of the general public imposes no municipal liability running to individual members of the public, we also recognize a general exception to the rule that where a relationship exists or has developed between an injured plaintff and agents of the municipality creating a duty to perform a mandated act for the benefit of particular persons or class of persons, then tort liability may arise. *See Haslund v. Seattle*, 86 Wn.2d 607, 547 P.2d 1221 (1976); *Campbell v. Bellevue*, 85 Wn.2d 1, 530 P.2d 234 (1975); *King v. Seattle*, 84 Wn.2d 239, 525 P.2d 228 (1974). *See generally* 1A C. Antieau, *Municipal Corporation Law* § 11.37 (1974). How-

[2]It is interesting to note that not unlike the present situation, the owner of the building stated in a deposition that he relied upon the city inspector to inform him of any fire hazards. *Duran v. Tucson*, 20 Ariz. App. 22, 509 P.2d 1059 (1973).

ever, in the instant case, appellant Tudor merely alleges generally that some special relationship existed without specifically stating what the relationship was or how it came about. As a result we cannot say that the trial court erred in granting the partial summary judgment.[3]

Appellant's second assignment of error is essentially directed to the italicized portion of instruction No. 21-B,

> The City of Seattle has a duty to maintain hydrants and storm drains in proper working order. *However, before the City can be considered negligent in failing to maintain such facilities it must first have notice, actual or constructive, that they are defective and a reasonable time thereafter in which to repair the same*[,]

(Italics ours.) which he claims conflicts with instruction No. 16,

> If you find that there was a broken drain line, a broken fire hydrant or backed up sewer, or any combination of these which were under the exclusive control of the City, and that it caused the damages complained of which would ordinarily not have occurred if the City had used ordinary care, there is an inference, permissible from the occurrence itself, that the injury was caused by the City's want of care; that is, its negligence.

Appellant contends that no notice need be given to the City in order for it to be negligent in the present situation. In support, appellant relies upon the decision in *Vittucci Importing Co. v. Seattle*, 72 Wash. 192, 130 P. 109 (1913), where the court held that persons damaged by the failure of a city to maintain a sewer need not show that the city had notice, actual or constructive, of the defect and a reasonable time to repair. The *Vittucci* court, at page 195, stated that

> [i]t is the city's duty to exercise ordinary care in causing an inspection of them from time to time, in order that

---

[3]Appellant also raises the issue of sovereign immunity and contends that RCW 4.92.090 and 4.96.010 render the City liable for its negligent acts. Without making an in-depth venture into this area, it can be said that the abrogation of sovereign immunity merely removes the defense of immunity but does not create any new liability for a municipality. Inasmuch as we have held that the appellant failed to show a necessary element of the tort alleged, *i.e.*, a duty, a discussion of the immunity issue is not merited.

needed repairs may be made therein and obstructions removed therefrom. . . . There appears to be no good reason why the city should be entitled to notice, either actual or constructive, of a defect or obstruction in one of its sewers as a necessary element of liability, *when such defect or obstruction is such that it would have been discovered by reasonable inspection.*

(Italics ours.) The opinion further states that when the defect is one which should have been anticipated and could have been rectified by occasional inspection, then the failure to examine renders the city liable with or without notice of the defect. *Accord, Floyd v. Butte,* 147 Mont. 305, 412 P.2d 823 (1966); *Portsmouth v. Mitchell Mfg. Co.,* 113 Ohio 250, 148 N.E. 846 (1925); *Tucson v. Hughes,* 23 Ariz. App. 350, 533 P.2d 561 (1975). *Contra, Elledge v. Des Moines,* 259 Iowa 284, 144 N.W.2d 283 (1966); *Pettinger v. Winnebago,* 239 Minn. 156, 58 N.W.2d 325 (1953); *Freitag v. Montello,* 36 Wis. 2d 409, 153 N.W.2d 505 (1967). On the other hand, we are faced with the City's contention that the instant case is more analogous to a situation involving streets. In order to be liable for defects in a street, a municipality must have notice of such defect or a reasonable period in which it could have discovered the defect. *Phoenix v. Williams,* 89 Ariz. 299, 361 P.2d 651 (1961); *Chase v. Seattle,* 80 Wash. 61, 141 P. 180 (1914); *Wilton v. Spokane,* 73 Wash. 619, 132 P. 404 (1913). *See generally* 19 E. McQuillin, *Municipal Corporations* § 54.102 (3d rev. ed. 1967).

In reviewing the instructions as given, we are hard pressed to determine what the conflict is between instructions Nos. 16 and 21-B. Moreover, even under the *Vittucci* rule, a case upon which appellant places great reliance, the defect must have been discoverable by reasonable inspection. In addition, we are hampered in our review of the instructions because of a lack of a statement of facts. Appellant provided us with a statement of facts containing only the actual instructions given and the exceptions taken thereto. We also note that the trial judge refused to certify the record as containing "all the material facts, matters and

proceedings heretofore occurring in the cause and not already a part of the record therein . . ." CAROA 37. As a consequence we do not know what evidence, if any, was adduced at trial to indicate whether the City did inspect the area around the fire hydrant and if it did, whether a leak was discoverable or not. From the record furnished us, we cannot say instruction No. 21-B is erroneous.

Judgment affirmed.

WILLIAMS, C.J., and CALLOW, J., concur.