[No. 6463-4-II.   Division Two.   January 2, 1985.]

EUGENE RADACH, ET AL, *Appellants*, v. OLE GUNDERSON, ET AL, *Respondents*.

*Jack L. Burtch,* for appellants.

*Michael A. Valdez,* for respondents Gunderson.

*Stanley Krause,* for respondent Ocean Shores.

*Michael R. Hutton,* for respondents Bickmore.

WORSWICK, C.J.—Ole and Barbara Gunderson decided to build a house on their ocean–front lot in the city of Ocean Shores. They contracted the job to David Bickmore. Bickmore mistakenly placed the house 10 feet closer to the ocean–front property line than permitted by the City's zoning code. Eugene and Adriana Radach, neighbors two lots away, complained to the City from almost the beginning, but the City did nothing and the house was completed. The Radachs brought action against the Gundersons and the City for injunctive relief. The Gundersons cross–claimed for indemnity against the City and Bickmore.

The trial court found a zoning code violation, but also found that the Gundersons were "completely innocent," and that the Radachs had suffered no substantial injury. It also found the City negligent, but concluded that it had no duty to the Radachs.[1] Therefore, having balanced the equities between the Radachs and Gundersons only, it concluded that no injunction or other relief was warranted.

On the Radachs' appeal, we reverse. We hold that the City had a duty to the Gundersons which, in the circumstances of this case, was sufficient to impose ultimate liability on the City, and that a balancing of the equities should have taken the egregious negligence of the City into account. We hold, on the undisputed facts in this record, that an injunction must issue compelling the Gundersons to move the house, and that the City must bear the entire expense.

The Radachs have owned their Ocean Shores vacation home since about 1971. The Gundersons owned the second lot to the south, separated by a 60–foot–wide vacant lot. The City's zoning code specifies that structures on such lots be no nearer than 50 feet to the property line that parallels and is closest to the waterfront. City ordinance 17.50.080. The City building inspector is required to enforce the setback provisions. City ordinance 17.62.010.

In 1977, the Gundersons hired Bickmore to build their house and obtain all necessary permits. The Gundersons were not residents of the area; they left all the details to Bickmore. Unfortunately, he thought the setback was 40 feet. When he applied for the building permit, he submitted a plot plan showing the proposed house 40 feet from the ocean–front property line. A secretary for the City Building Department issued the permit without noticing that it violated the zoning code. A few days later, the building inspector checked the foundation forms on the ground and approved them because they were set as shown

---

[1] The claim against Bickmore fell by the wayside when Gundersons settled Bickmore's claim against them for the balance of the construction cost.

on the plot plan. He also failed to notice the violation.

The Radachs first saw the construction during the 1977 Thanksgiving vacation. Mr. Radach noticed that the foundation was too close to the ocean. He reported the violation to the Building Department the following Monday. There were no workmen on the site at the time, and Mr. Radach did not know how to contact the Gundersons. The complaint prompted the building inspector to check the Gundersons' plan against the code. Now realizing that he had approved an illegal building, he visited the site and attempted unsuccessfully to locate Bickmore. He made no attempt to contact the Gundersons. By now, the exterior walls and roof were nearly completed.

During December, the inspector tried, again unsuccessfully, to call Bickmore or to talk with him at the site. He left messages with workmen to have Bickmore call him, but never told them that the building violated the code. He decided not to contact the Gundersons, feeling that his first responsibility was to work something out with Bickmore. Meanwhile, at least two other residents complained to the inspector about the violation. Still, he did nothing more until January, and then only referred the problem to the city attorney's office.

On January 4, the City sent letters to the Gundersons and Bickmore urging them to review the situation with neighbors before continuing the construction. The letter intimated that the house violated restrictive covenants,[2] but said nothing about the zoning code violation. It did not mention that construction could be stopped by the City. This was the first notice of a problem to be received by the Gundersons. They contacted Bickmore who suggested they ask for a zoning variance. They did so.[3]

---

[2]The area is also subject to restrictive covenants. However, no issue as to these covenants is before us on this appeal.

[3]The pertinent zoning code provisions read as follows:
"17.06.010 Application of Regulations.
"B. No building or other structure shall hereafter be erected or altered to

A hearing was conducted before the Board of Adjustment on February 2. The Radachs and several other property owners appeared and objected. The Board unanimously rejected a variance; the Gundersons thereupon stopped construction.

On February 7, the City notified the Gundersons that the building permit would not be revoked. On March 9, the City notified property owners in the area that it would allow the house to be completed. On March 10, it notified the Gundersons that it had no objections to their continuing construction. The Gundersons then completed the house. This action followed.

The Radachs make two basic assertions here. First, they argue that the City owed them a duty, for violation of which the City should be held liable. Second, they argue that they were absolutely entitled to an injunction, because the court was not permitted to balance the equities in view

---

exceed height or volume limitations, or to accommodate or house a greater number of families than allowed, or to occupy a greater percentage of lot area than allowed, or to have narrower or smaller rear yard, front yard, side yard or other open spaces than are allowed by this title.

"17.48.100 Nonconforming lots of record.

". . . Variance of yard requirements shall be obtained only through action of the board of adjustment.

"17.52.020 Variances.

"The board of adjustment shall have the authority to grant a variance from the provisions of this title, subject to the following provisions. Any variance granted shall be subject to such conditions as will assure that the variance does not constitute a grant of special privilege inconsistent with the limitation upon other properties in the vicinity and zone in which the subject property is located.

"17.52.070 Appeals.

"The decision of the board of adjustment shall be final unless within ten days from the date of the decision an appeal is filed with the superior court. The filing of such an appeal shall stay the decision until such time as the appeal is adjudicated or withdrawn. No construction on the subject application is allowed during consideration of appeal.

"17.62.030 Compliance required.

"Notwithstanding the imposition of any penalties hereunder, the city may institute any appropriate action or proceeding to require compliance with or to enjoin violation of the provisions of this title, or any administrative decisions made pursuant to this title."

of a clear violation of the zoning code.[4] We conclude that the Radachs should prevail, but for reasons other than those argued.

■ As to the City's duty, the questioned acts of the City here were entirely ministerial. It cannot assume the cloak of discretionary immunity. *Miotke v. Spokane,* 101 Wn.2d 307, 678 P.2d 803 (1984). The only remaining question is whether its acts and omissions violated a duty running not just to the general public, but to any interested individual; liability must be predicated on such a violation of a duty to an individual. *J & B Dev. Co. v. King Cy.,* 100 Wn.2d 299, 669 P.2d 468 (1983).

■ A city owes an actionable duty to an individual where a special relationship exists or has developed between that individual and the city's agents. *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 669 P.2d 451 (1983). Such a duty clearly ran from the City to the Gundersons. *J & B Dev. Co. v. King Cy., supra; Rogers v. Toppenish,* 23 Wn. App. 554, 596 P.2d 1096, *review denied,* 92 Wn.2d 1030 (1979). The Gundersons' liability runs to Radach and the City's duty runs to the Gundersons. The Gundersons have claimed indemnity from the City. For the reasons that follow, we conclude that a sufficient basis exists for imposing ultimate liability on the City regardless of whether the City owed a specific duty to the Radachs.

■ The posture of the case is this: the City was negligent; because of that negligence, the Gundersons innocently violated the zoning code; the Radachs are entitled to redress. Because the Radachs have been unable to show monetary damages, their remedy must be an injunction.

---

[4]The Radachs also attempt to take issue with the trial court's findings and conclusions concerning whether the Gundersons' deck violates the zoning code. At trial, all parties apparently agreed that the code does not regulate decks. Now, Radach complains that that assumption was in error. We note, however, that the code states that "decks may project into any required yard only to the extent permitted by the building code." City ordinance 17.50.210(F). The building code has not been provided in the record or in any party's brief. We will not consider the issue. *See Thomas v. French,* 99 Wn.2d 95, 659 P.2d 1097 (1983).

Were this purely an action at law, there is no doubt at all that the Gundersons would be entitled to indemnity from the City for any relief granted against them. *See Nelson v. Sponberg,* 51 Wn.2d 371, 318 P.2d 951 (1957); *Rufener v. Scott,* 46 Wn.2d 240, 280 P.2d 253 (1955).[5] Only a duty running from the City to the Gundersons would be necessary to support this result. *See J & B Dev. Co.,* 100 Wn.2d at 307; Restatement (Second) of Torts § 552(3) (1977). We see no reason why the same principles should not apply in equity. We hold that they do.

■■ There remains the question of balancing the equities. The Radachs essentially argue that this is appropriate only where the litigation concerns purely private interests. They are incorrect. *Steele v. Queen City Broadcasting Co.,* 54 Wn.2d 402, 341 P.2d 499 (1959). The process of balancing the equities involves the recognition that, in certain instances, courts should refuse equitable remedies where legal rights have been violated. *Arnold v. Melani,* 75 Wn.2d 143, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968). The factors to be considered are:

> (a) the character of the interest to be protected, (b) the relative adequacy to the plaintiff of injunction in comparison with other remedies, (c) the delay, if any, in bringing suit, (d) the misconduct of the plaintiff if any, (e) the relative hardship likely to result to the defendant if an injunction is granted and to the plaintiff if it is denied, (f) the interest of third persons and of the public, and (g) the practicability of framing and enforcing the order or judgment.

*Lenhoff v. Birch Bay Real Estate, Inc.,* 22 Wn. App. 70, 75, 587 P.2d 1087 (1978); *Holmes Harbor Water Co. v. Page,* 8 Wn. App. 600, 603, 508 P.2d 628 (1973); *see Steele v. Queen City Broadcasting Co.,* 54 Wn.2d at 411. The protection afforded by this process is not available to one who proceeds with knowledge that his actions encroach on the

---

[5]In view of the Gundersons' "innocence" as found by the trial court, this result would not be changed by RCW 4.22.040 (right of contribution among tortfeasors; common law indemnity abolished).

property rights of others. *Bach v. Sarich,* 74 Wn.2d 575, 445 P.2d 648 (1968); *Foster v. Nehls,* 15 Wn. App. 749, 551 P.2d 768 (1976), *review denied,* 88 Wn.2d 1001 (1977). The dispositive question in this case is whether the trial court balanced the conduct of the right parties. We hold it did not.

In undergoing this process, the trial court is vested with considerable discretion.

> Whether [exercise of] this discretion is based on untenable grounds, or is manifestly unreasonable, or is arbitrarily exercised, depends upon the comparative and compelling public or private interest of those affected by the order or decision and the comparative weight of the reasons for and against the decision one way or the other.

*Lenhoff,* 22 Wn. App. at 75. The trial court balanced the equities between the Radachs and the Gundersons only, and found that the scale tipped in favor of the Gundersons. This was not tenable, as the actions of the City were completely excluded from the equation.

The posture of this case being what it was, the Radachs had the right to have their interest and injury balanced against the interest and actions of the City, which had a duty to—and therefore, as to ultimate liability, stands in the shoes of—the Gundersons. When the City's conduct is included in the balance, it becomes plain that equitable relief must be granted to the Radachs at the expense of the City. *Bach v. Sarich, supra.*

■ The Radachs sued to protect their view and to prevent the City from allowing encroaching buildings to destroy the legally enforceable setback line. Injunctions have often been used to protect such interests. *Department of Ecology v. Pacesetter Constr. Co.,* 89 Wn.2d 203, 571 P.2d 196 (1977); *Hunt v. Anderson,* 30 Wn. App. 437, 635 P.2d 156 (1981). Although the trial court found that the injury did not devalue the Radachs' property, a demonstrable financial loss is not essential to support an injunctive remedy for a zoning violation. *Welton v. 40 E. Oak St.*

*Bldg. Corp.,* 70 F.2d 377 (7th Cir. 1934). The improper set-back creates a continuing condition which adversely affects the Radachs' enjoyment of their property. A continuing injury is remedied properly by injunction. *See Brown v. Voss,* 38 Wn. App. 777, 689 P.2d 1111 (1984). In our view, the equities must be very compelling indeed to avoid an injunction to correct a clear violation of a zoning ordinance. Therefore, we generally agree that:

> [A]n action for injunctive relief is the appropriate remedy of an aggrieved property owner who seeks to bar the erection of a structure on adjoining or nearby premises in violation of express zoning regulations.

*Lesron, Jr., Inc. v. Feinberg,* 13 A.D.2d 90, 95, 213 N.Y.S.2d 602, 607 (1961).

■ Coupled with the injury to Radachs' property interest is the public injury caused by the City's complete failure to enforce the setback ordinance. The public interest is properly considered in determining if a zoning violation should be enjoined. *Welton v. 40 E. Oak St. Bldg. Corp.,* 70 F.2d at 383. "The enforcement of a zoning ordinance by injunction is essential if the amenities of the area sought to be protected are to be preserved." *Mercer Island v. Steinmann,* 9 Wn. App. 479, 486, 513 P.2d 80 (1973). The City's inaction served to defeat rather than preserve the public interest which it was charged with protecting.

The Radachs were not guilty of delay or misconduct, and the injunction can be practicably framed and enforced. The injunction will affect the City financially, but the City ignored its responsibility and allowed the Gundersons to expend a great deal of money constructing a house that was illegally situated. In so doing, it knowingly violated its duty to the Gundersons, apparently taking a calculated risk that the problem would disappear. It was or should have been aware of the serious exposure this created for the Gundersons. The City was egregiously negligent; its financial hardship will not now insulate it. *Eastlake Comm'ty Coun. v. Roanoke Assocs.,* 82 Wn.2d 475, 513 P.2d 36 (1973).

The Radachs also contend—as do the Gundersons on

cross appeal—that the trial court erred by not awarding them attorney's fees. We find no merit in these contentions.

Because it is clear to us that an injunction must issue, we see no need to burden the trial court with unnecessary further proceedings. This is an appropriate case for the application of RAP 12.2. Therefore, we reverse and remand with directions to issue an injunction requiring the Gundersons' house to be brought into compliance with zoning setback requirements and, after appropriate further proceedings, to enter judgment against the City for the expense thereof.

REED and PETRICH, JJ., concur.

Reconsideration denied January 24 and 30, 1985.

Review denied by Supreme Court March 15 and April 19, 1985.