[No. 7379-3-III.   Division Three.   December 11, 1986.]

GARY W. PIERCE, ET AL, *Appellants*, v. SPOKANE COUNTY, ET AL, *Respondents*.

*William T. Murphy* and *Layman, Loft, Smythe & Arpin,* for appellants.

*William D. Hyslop, Erika Balazs,* and *Lukins & Annis,* for respondents.

THOMPSON, J.—Gary and Monica Pierce brought this negligence action against Spokane County and James Dunham,[1] a housing contractor, seeking damages for alleged negligent construction of their home. The Pierces appeal the summary judgment dismissal of the County, alleging the court erred in concluding the County owed them no duty. We affirm.

The fundamental facts are not in dispute. During construction of the house, County Building Inspector Morris Aman determined the foundation rested on fill which was potentially unstable and ordered the construction stopped pending further review of soil compaction characteristics. The County reviewed soil compaction tests performed on an adjacent lot, but did not require a soil test on the Pierces' lot. The Pierces claim the report on the soil compaction test of an adjacent lot was irrelevant to their lot and not sufficient, in any event, to meet the Uniform Building Code requirements for houses built on fill. James Dunham, the builder of the Pierce house, followed the instructions of the County and was allowed to continue building. Eventually, the County gave final approval of the house in March 1979.

That same month the Pierces purchased the house and property from Mr. Dunham, and about 3 years later noticed severe cracking in the foundation. The Pierces brought this action alleging Mr. Dunham was negligent in site preparation and that the County was negligent in inspecting the house and underlying soil. After this action was commenced, Mr. Dunham declared bankruptcy.

The Pierces claim the court erred in granting summary judgment for the County when it ruled, based on the public duty doctrine, that the County owed no duty to the Pierces. They contend the public duty doctrine is not applicable here.

When reviewing an order granting summary judg-

---

[1]Although James and Karen Dunham are parties to this action, we refer to the marital community in the singular.

ment, this court must "engage in the same inquiry as the trial court." *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The court must consider the evidence in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972). The "public duty doctrine" provides generally, that for one to recover from a municipal corporation in tort, it must be shown that the duty breached was owed to the injured person as an individual and not merely to the public at large.[2] *J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 303, 669 P.2d 468, 41 A.L.R.4th 86 (1983); *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 284, 669 P.2d 451, 39 A.L.R.4th 671 (1983); RCW 4.96.010. To invoke the doctrine, it is necessary to decide whether the County is under a general duty to a "nebulous public", or whether that duty is aimed toward a specific claimant. *Hartley v. State*, 103 Wn.2d 768, 782, 698 P.2d 77 (1985); *J & B Dev. Co.*, at 304; *Honcoop v. State*, 43 Wn. App. 300, 308, 716 P.2d 963 (1986); *see also* Annot., *Modern Status of Rule Excusing Governmental Unit From Tort Liability on Theory That Only General, Not Particular, Duty Was Owed Under Circumstances*, 38 A.L.R.4th 1194, 1200 (1985).

■ A recognized "special relationship" exception to the public duty doctrine applies when a plaintiff can prove a special or particular duty—something more than a duty owed to the general public—arising out of some direct contact *or* special relationship between the municipality and the plaintiff, to use due care for the benefit of the plaintiff

---

[2]The dissent in substance is urging this court to apply general concepts of tort liability and ignore the "public duty doctrine" special relationship requirement, allowing trial on the basis of negligence and proximate cause. In concurring opinions in both *J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 309, 669 P.2d 468, 41 A.L.R.4th 86 (1983) and *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 290, 669 P.2d 451, 39 A.L.R.4th 671 (1983), it is strenuously urged that in line with the general trend in other jurisdictions, the "public duty doctrine" should be eliminated in favor of the application of general principles of tort law. It is apparent from the majority opinions in these two cases and *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985) that the doctrine is still viable in the State of Washington.

or his class of persons. 1A C. Antieau, *Municipal Corporation Law* § 11.28 (1986); *Hartley*, at 781–82. A special relationship arises triggering an actionable duty where "(1) there is some form of privity between the [municipality] and the victim that sets the victim apart from the general public, and (2) there are explicit assurances of protection that give rise to reliance on the part of the victim". (Citations omitted.) *Chambers–Castanes*, at 286. "Privity" refers to the relationship between the municipality and any reasonably foreseeable plaintiff, and "assurances" in some instances, can be implied in the nature of the relationship. *Chambers–Castanes*, at 286. The County claims the Pierces were not in a special relationship with it and the only direct contact was between the County building inspectors and Mr. Dunham, the builder of their home. The Pierces were never involved with the County. We agree.

In *J & B Dev. Co.*, a developer was issued a building permit by the King County Building Department even though the plan failed to provide for the required setback. The approving official failed to notice the error, and a later inspection did not detect it. Since the developer had dealt directly with the County's agents and justifiably relied upon the permit and inspection, the court held a special relationship existed between the developer and the County. *J & B Dev. Co.*, at 306. *See, e.g., Chambers–Castanes*, at 286–87 (plaintiff's conversation with police dispatchers established privity). In *Campbell v. Bellevue*, 85 Wn.2d 1, 10, 530 P.2d 234 (1975), an action for alleged negligent enforcement of an electrical code, a Bellevue employee's assurances to the property's caretaker and a neighbor created privity with the homeowner. There, "a special relationship arose between the plaintiff and the City, thereby rendering the City subject to tort liability". *Chambers–Castanes*, at 285–86. Because there was no direct contact between the County and the Pierces, nor did a special relationship based on privity and reliance develop in this case, no actionable duty arose under this theory. *See Georges v. Tudor*, 16 Wn. App. 407, 556 P.2d 564 (1976).

█ Notwithstanding, governmental liability may still be recognized when legislation mandates protection of a "particular and circumscribed class of persons". *Halvorson v. Dahl*, 89 Wn.2d 673, 676, 574 P.2d 1190 (1978). Under similar facts involving county building permit and inspection requirements, that class of persons has been expressly limited to builders, however: "Further, the permit and inspection requirements do not create a duty of care applicable merely to the public in general. Rather, they apply to a limited class of citizens, *the builders.*" (Italics ours.) *J & B Dev. Co.*, at 307.

Even if the holding in *J & B Dev. Co.* were to be limited to its facts as the dissent suggests, a commonsense interpretation of the policy behind the building code statute, RCW 19.27, mandates the protected class be limited to builders. RCW 19.27.020 sets forth the statutory purpose as follows: "The purpose of this chapter is to promote the health, safety and welfare *of the occupants or users of buildings and structures and the general public* by the provision of building codes throughout the state." (Italics ours.)

We note the court in *Halvorson*, at 677, found a duty running to building occupants based on language in section 27.04.020 of the Seattle Housing Code identifying conditions "dangerous and a menace to the health, safety, morals or welfare of the *occupants of such buildings and of the public . . .*" (Italics ours.) *Halvorson*, at 677 n.1. Nevertheless, we conclude the purposes of a housing code are necessarily more focused on the health and safety of occupants of substandard buildings, *see Hartley*, at 782–83, than are the broader purposes encompassed in building codes. Moreover, an additional requirement of "culpable neglect" or "indifference" to code violations is present under a *Halvorson* "occupant" analysis, thus narrowing its application further. *Hartley*, at 783.

Finally, we concur with the statutory analysis of *Georges*, at 409, which concludes the general purpose of building codes, permits and inspection is to protect the general pub-

lic. For the foregoing reasons, we hold subsequent occupants do not fall within the particular and circumscribed class of persons protected by the building code; hence, no duty arose.

Affirmed.

GREEN, C.J., concurs.

McINTURFF, J. (dissenting)—I respectfully dissent. The majority's application of the public duty doctrine results in an injustice to the Pierces; by applying an overly technical concept of privity, the majority deprives the Pierces of the opportunity of a trial on their claim of negligence against the County. The Washington version of the special relationship exception premises legal liability on the existence of some direct contact or special relationship between the defendant and the injured party. *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985). However, the majority's holding that direct contact between the plaintiff and the County is necessary to create a special relationship is too narrow in view of the previous holdings of Washington courts and the rationale therefor.

*Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975) imposed liability on the City due to a special relationship between the City and the woman killed by electrocution when a City electrical inspector had examined and knew of the danger of faulty wiring in a creek bed, yet failed to comply with the ordinance requiring him to shut off the power. The woman killed was a neighbor of the homeowner in noncompliance with the electrical code. The *Campbell* court said at page 13:

> These requirements were not only designed for the protection of the general public but more particularly for the benefit of those persons or class of persons residing within the ambit of the danger involved, a category into which the plaintiff and his neighbors readily fall.

Although there may have been some contact by the decedent's husband with the City in reporting the violation,

there was no contact by the decedent. There was also an assurance by the City to another neighbor that the problem had been corrected. However, there is no indication in the *Campbell* decision that this was necessary to form a special relationship. Rather, the *Campbell* court focused on the purpose of the municipal code to benefit and protect people residing in the area of danger.

In deciding when an actionable duty to provide police services arises, the court in *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 286, 669 P.2d 451, 39 A.L.R.4th 671 (1983) held there were two requirements that create a special relationship: (1) some form of privity that sets the victim apart from the general public, and (2) assurances of protection giving rise to reliance on the part of the victim. The court said privity is used in the broad sense and refers to a relationship between the police department and any reasonably foreseeable plaintiff. *Chambers–Castanes,* at 286. Again, there is no indication that direct contact is required, although it was present in the case in the form of telephone calls requesting assistance from the police department. Rather, direct contact seems to be an example of one way the plaintiff becomes set apart from the general public and the consequent duty is formed.

*J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 304, 669 P.2d 468, 41 A.L.R.4th 86 (1983) also is not dispositive on the issue of whether direct contact is required to create a special relationship. On the element of duty, the court said, "[t]o be actionable, the duty owed must focus on the one injured, not on the public at large." *J & B Dev. Co.,* at 304. To sustain an action against a municipality, it is necessary to decide if the duty has focused on the claimant as opposed to a general duty to a nebulous public; the "special relationship" is the focusing tool. *J & B Dev. Co.,* at 305.

In its rationale for holding that a special relationship existed and the builder could recover for a negligently issued building permit when setback requirements were violated, the court looked at the reasons for requiring building permits. It said there was little reason to require a

building permit if the home builder could not rely on it, *J & B Dev. Co.*, at 306, thus *negating the argument that the building permits serve only a public purpose of general conformity to building codes which gives rise to no individual duty to permittees.* The court said a home builder should be able to rely on the county to furnish accurate information as well as permits, and that the issuance of a permit inherently implies the county has verified that the proposed structure is in compliance with the applicable code provisions. *J & B Dev. Co.*, at 306.

The majority quotes language from *J & B Dev. Co.*, at 307: "Further, the permit and inspection requirements do not create a duty of care applicable merely to the public in general. Rather, they apply to a limited class of citizens, the builders." Because *J & B Dev. Co.* was concerned only with liability by the County to the builder, no home occupier being involved in the dispute, a literal reading of *J & B Dev. Co.* to exclude all but builders from the limited class of persons in a special relationship is incorrect. The thrust of the analysis in the opinion was examination of the reason for requiring a building permit. *J & B Dev. Co.*, at 306.

The building permit statute, RCW 19.27.020,[3] specifically indicates the Legislature sought to protect the occupants of the building itself. Occupants are a class set apart from the general public. If the purpose of requiring a permit is to protect the occupants, it defies logic to hold that only the builder, who ordinarily will not occupy the building, has the requisite special relationship with the county, enabling him to sue the county if the county negligently issues the permit. Further, direct contact by the builder should be sufficient to confer a special relationship for the benefit of at least the initial occupants, since this is the class the building permit statute is designed to protect. *Campbell*'s find-

---

[3]RCW 19.27.020 reads:

"The purpose of this chapter is to promote the health, safety and welfare of the *occupants or users of buildings and structures and the general public* by the provision of building codes throughout the state." (Italics mine.)

ing of a duty in circumstances where a neighbor or spouse contacted the City supports this holding. *Campbell,* at 3. I would hold the Pierces were within the class of persons, *i.e.,* occupants, in a special relationship with the County; therefore, the County owed the Pierces, as occupants of the building, a statutory duty of care upon issuing the building permit.

I also disagree with the majority's holding that the legislative intent exception is inapplicable in this case. In *Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978) the court found the Seattle Housing Code was enacted to benefit a special group of persons, along with the general public. The language of the Seattle Housing Code identified conditions dangerous to the health, safety, morals or welfare "of *the occupants of such buildings* and of the public". *Halvorson,* at 677. *Halvorson* distinguished the purpose of the Seattle Building Code, which was to "safeguard life or limb, health, property, and *public welfare".* (Italics mine.) *Halvorson,* at 677. Here, the language in RCW 19.27.020 is more similar to the language in the Seattle Housing Code than the language in the Seattle Building Code. The purpose of RCW 19.27.020 is to promote health, safety, and welfare of the *occupants or users of buildings and structures and the general public.* Occupants are a special group apart from the public that RCW 19.27.020 was enacted to benefit. Therefore, RCW 19.27.020 can be construed to create a legislative intent exception to the public duty doctrine.[4]

I would hold the legislative intent exception to the public duty doctrine is applicable in this case. RCW 19.27.020 was intended to specially benefit occupants of buildings and the Pierces are within this class.

---

[4]The holding in *Baerlein v. State,* 92 Wn.2d 229, 595 P.2d 930 (1979) that there was no legislative intent exception in the case of security regulations is clearly inapposite to these cases involving building permits. The disclaimer in *Baerlein* was embodied in the statute and specifically exempted the State from any duty for a misleading, incomplete or false securities registration statement. *Baerlein,* at 232.

The contention that such a holding would make the County an insurer[5] of building construction is without foundation; rather it makes the County responsible for its negligence, which is in accord with the Legislature's declaration that the government should be treated as a private individual. RCW 4.96.010.[6] A private defendant's ability to pay is not considered when determining private tort liability.

> [T]he purpose of imposing liability for negligence is to make the negligent wrongdoer compensate the injured party. If government agents are negligent, the innocent victims of their negligence should not have to bear the cost.

Comment, *A Unified Approach to State and Municipal Tort Liability in Washington*, 59 Wash. L. Rev. 533, 541 (1984).

Fear of unlimited municipal tort liability is unfounded. First, proximate cause is as effective a limitation on government tort liability as it is on the liability of a private party. Comment, 59 Wash. L. Rev. at 541 n.56 (citing W. Prosser, *Torts* § 131, at 979–82 (4th ed. 1971)). Second, although our courts, in the quest for justice, have been protective of the county, in the past the county has been held liable. It is already established that a county may be liable to a homeowner employing a builder to build his home. *Radach v. Gunderson*, 39 Wn. App. 392, 695 P.2d 128 (1985). Further, it is established the county may be liable to the builder himself. *J & B Dev. Co. v. King Cy.*, *supra* at 312. Neither of these previous holdings resulted in unlimited municipal liability.

---

[5]To insure is "to engage to indemnify a person against pecuniary loss from specified perils or possible liability." Black's Law Dictionary 726 (5th ed. 1979).

[6]RCW 4.96.010 provides:

"All political subdivisions, municipal corporations, and quasi municipal corporations of the state, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers, agents or employees to the same extent as if they were a private person or corporation: . . ."

I would reverse the Superior Court's order granting summary judgment.

Reconsideration denied January 29, 1987.

Review denied by Supreme Court May 5, 1987.