[No. 7260–6–III.   Division Three.   January 29, 1987.]

HARRY TAYLOR, ET AL, *Appellants,* V. STEVENS COUNTY,
ET AL, *Respondents,* AMERICAN PACIFIC
REALTY, INC., ET AL, *Appellants.*

*Helen Hokom,* for appellants Taylor.

*Terence Whitten, Erika Balazs,* and *Lukins & Annis,* for appellants American Pacific Realty, et al.

*Andrew Braff* and *Braff & Lowry,* for appellants Murray.

*Paul Grable, Frederick Dullanty,* and *Winston & Cash-att,* for respondents.

GREEN, J.—Harry and Robin Taylor brought an action against Stevens County, American Pacific Realty, Inc., and the sellers, Harry and Mary Murray, for damages as a result of alleged defects in the home they purchased from the Murrays. The County moved for dismissal based on the pleadings for failure to state a claim. CR 12(b)(6). This motion was granted. American Pacific Realty, the Murrays, and the Taylors appeal. The propriety of this dismissal presents the sole issue on appeal.

The following statement of facts is based upon the allegations in the parties' pleadings. In 1981 the Murrays, owners of a home near Colville, listed their home for sale with American Pacific Realty. During that summer and fall, the Taylors, who resided in western Washington, decided to buy a home in eastern Washington. In November Alan Mack of American Pacific Realty showed the Murrays' home to the Taylors. The Taylors allege they inquired and were assured by Mr. Mack that all county permits and inspections concerning the house were in order. Subsequently they were informed by Mr. Skidmore, attorney and closing agent for the Murrays and American Pacific Realty, that a building permit would be obtained prior to closing. The realty company denies that any assurances were given the Taylors and that Mr. Skidmore acted as its closing

agent. On November 30 the Murrays applied to Stevens County for a building permit. In early December the county building inspector inspected the Murrays' home and noted that the home appeared to be average for the area. On December 7, 1981, the County issued a permit to the Murrays with an expiration date of December 7, 1982, on the condition that future inspections would be required. The sale to the Taylors was completed on December 8, 1981. The sales agreement noted the house was not fully completed and the Taylors acknowledged they had examined the premises and accepted it "as is". The Taylors moved into the home during the spring of 1982.

Subsequently, various defects were discovered by the Taylors. On August 8, 1983, at the Taylors' request, the County inspected the premises again and found numerous violations of the building code. After their claim against the County was denied, this action was commenced. The court dismissed the claims against Stevens County on two bases: (1) it owed no actionable duty to the Taylors, the Murrays, or American Pacific Realty, and (2) even if it did, the exculpatory language in the county building code relieved it of any liability. This appeal followed. Since the dismissal was based on the pleadings pursuant to CR 12(b)(6), we must treat all facts alleged by the parties and the reasonable inferences therefrom as true. *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 577 P.2d 580 (1978).

In 1961 the Legislature abolished sovereign immunity making the State liable for damages arising out of its tortious conduct to the same extent as a private person or corporation. RCW 4.92.090. In 1967 it abolished sovereign immunity for its subdivisions as well. RCW 4.96.010. These statutes did not create new causes of action nor create new liability. *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 287–88, 669 P.2d 451, 39 A.L.R.4th 671 (1983). Immunity was retained where the State's action is discretionary rather than ministerial, *Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 407 P.2d 440 (1965), or the duty owed by the State is to the public generally rather than a private

person—commonly denominated the "public duty doctrine". *Chambers–Castanes v. King Cy., supra.* Only the second situation is involved in this appeal. The courts have refused to apply the public duty doctrine where (1) a statute clearly indicates it is intended to protect a "class" of persons of which the complaining individual is a member, *Baerlein v. State,* 92 Wn.2d 229, 231–32, 595 P.2d 930 (1979); *Halvorson v. Dahl,* 89 Wn.2d 673, 676, 574 P.2d 1190 (1978); *Mason v. Bitton,* 85 Wn.2d 321, 325–26, 534 P.2d 1360 (1975); or (2) a "special relationship" has developed between an individual and the governmental entity creating a duty to perform a mandated act for the benefit of a particular person or class of persons. *Hartley v. State,* 103 Wn.2d 768, 698 P.2d 77 (1985); *J & B Dev. Co. v. King Cy.,* 100 Wn.2d 299, 669 P.2d 468, 41 A.L.R.4th 86 (1983); *Chambers–Castanes v. King Cy., supra* at 285; *Campbell v. Bellevue,* 85 Wn.2d 1, 13, 530 P.2d 234 (1975).[1]

First, the Taylors contend that RCW 19.27.031, which requires all counties to adopt the Uniform Building Code, was intended to protect them individually. We disagree. The traditional rule is that municipal ordinances impose a duty upon municipal officials which is owed to the public as a whole and not to any particular individual. *Halvorson v. Dahl, supra* at 676; *Georges v. Tudor,* 16 Wn. App. 407, 556 P.2d 564 (1976). However, liability may be predicated upon a code which by its terms indicates a clear intent to protect a particular class of persons. The Taylors assert the purpose of the building code which is "to promote the health, safety and welfare of the occupants or users of buildings and structures . . .", RCW 19.27.020, encompasses within its ambit subsequent purchasers, like themselves. The County argues this interpretation is too

---

[1]The court has also declined to apply the public duty doctrine where the governmental entity has gratuitously assumed a duty to an individual. *Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975); *Sado v. Spokane,* 22 Wn. App. 298, 588 P.2d 1231, *review denied,* 92 Wn.2d 1005 (1979); Comment, *A Unified Approach to State and Municipal Tort Liability in Washington,* 59 Wash. L. Rev. 533 (1984).

broad because it would include every man, woman and child in the state of Washington—a result not intended by the Legislature.

Language very much like that under consideration was found to protect the occupant of a hotel who died in a fire in *Halvorson v. Dahl, supra.* The court in *Halvorson* held the language of section 27.04.020 of the Seattle Housing Code, which stated "conditions and circumstances . . . dangerous and a menace to the health, safety, morals or welfare of the *occupants* of such buildings and of the public . . .", was intended to include the deceased occupant; thus the City of Seattle had a duty to exercise reasonable care in enforcing the code. (Italics ours.) *Halvorson,* at 677 n.1. Both the ordinance in *Halvorson* and the building code in the instant case refer to "occupants" as a protected class. However, we do not find *Halvorson* controlling.

Here, we are not concerned with an occupant or user in the *Halvorson* sense, but buyers and sellers of real property. To extend *Halvorson* to this situation would make the County the ultimate insurer when a home is sold and code defects are thereafter discovered. We do not find this to have been the Legislature's intent. Thus, the Taylors' contention they are within the umbrella of RCW 19.27 must be rejected.

Second, the Murrays contend they come within the special relationship exception to the public duty doctrine by virtue of the County's inspection and issuance of the building permit. The Taylors also claim a special relationship contending their rights are derived through the Murrays or through their status as purchasers from them. American Pacific Realty contends it too has a special relationship because it prepared the permit application for the Murrays and relied on the inspection in closing the sale. These contentions must be rejected.

A special relationship is determined by whether the municipality's duty has "focused" upon a particular individual. *J & B Dev. Co.,* at 304. This generally requires some form of privity between the entity and the individual and

reliance upon express or implied assurances by the entity. *Chambers–Castanes,* at 286. Privity is broadly defined to include any "reasonably foreseeable plaintiff." *Chambers–Castanes,* at 286. A special relationship has been found where a crime victim had made several calls of help to police dispatchers who assured help was on the way, but who did not arrive until 1 hour 20 minutes later (*Chambers–Castanes v. King Cy., supra*); where an inspection and assurances by a city agent that an electrified stream had been corrected but it had not, resulting in the death of the plaintiff's wife (*Campbell v. Bellevue, supra*); and where a buyer of property relied on inaccurate zoning information and suffered economic loss (*Rogers v. Toppenish,* 23 Wn. App. 554, 596 P.2d 1096, *review denied,* 92 Wn.2d 1030 (1979)).

In *J & B Dev. Co.,* the court held that with respect to setback requirements, a builder had the right to rely on a building permit issued by the County and the permit inherently implied that the proposed structure was in compliance with applicable code provisions. The court found the County's permit and inspection requirements were intended to benefit a limited class, the builders. They based this conclusion upon Restatement (Second) of Torts § 552(3) (1977):

> The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

In the case at hand, it would appear the Murrays, who applied for and received the building permit from the County, are within the class of "builders" intended to be protected. However, to recover based on a special relationship, the Murrays must allege they relied upon the permit as a certification the house was free of defects. Here, the Murrays allege the house was completed at the time of the inspection and issuance of the permit and further allege they relied upon it for purposes of consummating the sale.

Thus, the application was not made for purposes of future construction, but only for the purpose of closing the sale. The code requires an application for a building permit before construction begins and calls for periodic inspections as the construction proceeds to completion. The permit and final approval are conditioned upon passing the periodic inspections. Here, the home was constructed and then a permit was sought. In this situation, the Murrays had no right to rely upon the county inspection and permit because they had already completed construction of the home and were living in it. Again, we do not believe the County is intended to be an insurer against defects created by the seller and later discovered by an unhappy purchaser of a home. This is not the type of reliance anticipated by the statute nor the case law. *J & B Dev. Co. v. King Cy., supra.* Thus, we conclude the Murrays have failed to allege a special relationship and their contention to the contrary must be rejected.

To the extent the Taylors claim their rights are derived from the Murrays' relationship to the County, it fails as well. The class to be protected is "builders", which the Taylors are not. This leaves the question of whether the Taylors have stated sufficient allegations to independently establish a special relationship. As already stated, the duty must "focus" on the particular individual which generally requires some form of privity between the entity and the individual. Here, there was no contact between the Taylors and the County. The Taylors argue privity is not required, relying on *Radach v. Gunderson,* 39 Wn. App. 392, 695 P.2d 128, *review denied,* 103 Wn.2d 1027 (1985). We do not agree. In *Radach,* the Gundersons hired a builder to construct an oceanfront home and the City inspected and issued a building permit without noticing it violated the setback requirements of the zoning code. The adjoining property owner, Radach, notified the City but, even after the City was aware of the violation, it refused to halt construction. The court clearly stated "Gundersons' liability runs to Radach and the City's duty runs to the Gunder-

sons." *Radach,* at 397. Privity between Radach and the City was not required because the Radach recovery was against the Gundersons. The Gundersons recovered by way of indemnity from the City based on privity.

Even using the broad definition of privity in *Chambers–Castanes,* the Taylors were not "reasonably foreseeable plaintiffs" when the County issued the permit. Again, every prospective purchaser of a home would be a "reasonably foreseeable plaintiff", a result not intended by the abrogation of sovereign immunity. We reiterate the purpose of the building and similar codes is generally viewed as a duty owed to the public, not the individual. *Georges v. Tudor, supra.* It is inconceivable the Legislature intended to shift liability for defective construction from the builder to the municipality and its taxpayers when it enacted the building codes. Moreover, to expand the definition of privity to include subsequent purchasers would be contrary to established case law which limits the class of reasonably foreseeable plaintiffs to builders. *J & B Dev. Co. v. King Cy., supra.* Thus, the Taylors' complaint fails to allege a special relationship and was properly dismissed.

For the above reasons, we also find American Pacific Realty's and its agent's claim based upon a special relationship fails as well. First, the duty owed, if any, was to the Murrays as builders, not the realty company. Second, relying on the certification for purposes of consummating the sale is not, as a matter of law, the type of reliance anticipated by the statute or case law. There was no error in dismissing American Pacific Realty's claim.

Finally, the Taylors contend the court erred in failing to consider their common law causes of action based upon negligent misrepresentation, negligence, and promissory estoppel. The Taylors raise this in their reply brief for the first time and thus we will not consider it on appeal. RAP 10.3(c).

In light of our holding, we need not reach the question of whether the exculpatory provisions of the county building code relieved it of liability.

Affirmed.

MUNSON, J., concurs.

McINTURFF, C.J. (dissenting)—I dissent. The Murrays fall squarely within the special relationship exception to the public duty doctrine. In *J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 307–08, 669 P.2d 468, 41 A.L.R.4th 86 (1983), the court held that a builder who requests a building permit and inspection from the county is in a special relationship with the county and therefore the county has a duty to exercise reasonable care in issuing the building permit. The Murrays were both the builders and occupants of the residence in question. At the time they requested a building permit, the County had a duty to exercise reasonable care in issuing the permit.

The majority agrees that the Murrays initially fall within the class intended to be protected by the building permit and inspection requirements, but determines that "to recover based on a special relationship, the Murrays must allege they relied upon the permit as a certification the house was free of defects." Majority, at 139. I disagree with the majority that under existing case law a showing of actual reliance by the plaintiff is required as part of a showing the plaintiff falls within the special relationship exception to the public duty doctrine. Rather, a duty on the part of the county arises at the point when the permit is issued. Actual reliance on the permit after the permit is issued is irrelevant on the question of whether the county has a duty to the permittee, although actual reliance may well be important on the causation element of a negligence action.

The purpose of the special relationship rule is to focus on whether a duty is actually owed a claimant rather than the public at large. *J & B Dev. Co. v. King Cy., supra* at 305. Once the county's duty has been focused through the "special relationship", the claimant must establish breach of duty and resultant damages. *J & B Dev. Co. v. King Cy.,*

*supra* at 305. To confuse causation with duty, by requiring a showing of actual reliance to prove a special relationship, is to unnecessarily further confuse the application of the public duty doctrine. Criticism of the public duty doctrine is already abundant. Note *Hartley v. State: The Public Duty Doctrine in Washington,* 22 Willamette L. Rev. 405 (1986); 1A C. Antieu, *Municipal Corporation Law* § 11.29 (1986); *J & B Dev. Co.,* at 309 (Utter J., concurring in the result) ("I believe we should eliminate the 'public duty doctrine' and simply apply general principles of tort law. . . . [T]he special label 'public duty doctrine' is unnecessary and obscures what is the proper analytical approach— hence, I would rid ourselves of this albatross once and for all.").

Second, per my dissent in *Pierce v. Spokane Cy.,* 46 Wn. App. 171, 730 P.2d 82 (1986), I disagree with the proposition that direct contact by the permittee is necessary to create a special relationship. In *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985), the court held the special relationship exception was premised on some direct contact *or* special relationship between the defendant and the injured party. Direct contact is merely an example of one way the plaintiff becomes set apart from the general public and a consequent duty to the plaintiff is formed. To determine if a special relationship exists, the court should determine the class of persons the building permit and inspection requirements were designed to benefit. *J & B Dev. Co.,* at 306; *Campbell v. Bellevue,* 85 Wn.2d 1, 13, 530 P.2d 234 (1975) (found a duty existed to the plaintiff apart from that to the general public with regard to an electrical inspection). The building permit statute, RCW 19.27.020 and former RCW 19.27.030, specifically indicates the Legislature sought to protect the occupants of the building. RCW 19.27.020 provides: "The purpose of this chapter is to promote the health, safety and welfare of the *occupants or users of buildings and structures and the general public* by the provision of building codes throughout the state." (Italics mine.)

The Taylors are occupants of the residence built and occupied initially by the Murrays. They are the first occupants after the building permit was issued. The special relationship should extend at least to the first occupants after the permit is issued since it is foreseeable the occupants would be harmed by breach of the duty.

Third, I disagree with the majority's holding that the legislative intent exception is inapplicable in this case. In *Halvorson v. Dahl*, 89 Wn.2d 673, 574 P.2d 1190 (1978) the court found the Seattle Housing Code was enacted to benefit a special group of persons, along with the general public. The language of the Seattle Housing Code identified conditions dangerous to the health, safety, morals or welfare "of *the occupants of such buildings* and of the public". *Halvorson*, at 677. *Halvorson* distinguished the purpose of the Seattle Building Code, which was "to safeguard life or limb, health, property, and *public welfare*". (Italics mine.) *Halvorson*, at 677 n.2. Here, the language in RCW 19.27.020 is more similar to the language in the Seattle Housing Code than the language in the Seattle Building Code. The purpose of RCW 19.27.020 is to promote health, safety, and welfare of the *occupants or users of buildings and structures and the general public.* Occupants are a special group apart from the public that RCW 19.27.020 was enacted to benefit. Therefore, RCW 19.27.020 can be construed to create a legislative intent exception to the public duty doctrine.[2]

I would hold the legislative intent exception to the public duty doctrine is applicable in this case. RCW 19.27.020 was intended to specially benefit occupants of buildings and the Taylors are within this class.

As I said in *Pierce v. Spokane Cy., supra* at 179–80:

---

[2]The holding in *Baerlein v. State*, 92 Wn.2d 229, 595 P.2d 930 (1979) that there was no legislative intent exception in the case of security regulations is inapposite to these cases involving building permits. The disclaimer in *Baerlein* was embodied in the statute and specifically exempted the State from any duty for a misleading, incomplete or false securities registration statement. *Baerlein*, at 232.

The contention that such a holding would make the County an insurer[5] of building construction is without foundation; rather it makes the County responsible for its negligence, which is in accord with the Legislature's declaration that the government should be treated as a private individual. RCW 4.96.020.[6] A private defendant's ability to pay is not considered when determining private tort liability.

[T]he purpose of imposing liability for negligence is to make the negligent wrongdoer compensate the injured party. If government agents are negligent, the innocent victims of their negligence should not have to bear the cost.

Comment, *A Unified Approach to State and Municipal Tort Liability in Washington,* 59 Wash. L. Rev. 533, 541 (1984).

Fear of unlimited municipal tort liability is unfounded. First, proximate cause is as effective a limitation on government tort liability as it is on the liability of a private party. Comment, 59 Wash. L. Rev. at 541 n.56 (citing W. Prosser, *Torts* § 131, at 979–82 (4th ed. 1971)). Second, although our courts, in the quest for justice, have been protective of the county, in the past the county has been held liable. It is already established that a county may be liable to a homeowner employing a builder to build his home. *Radach v. Gunderson,* 39 Wn. App. 392, 695 P.2d 128 (1985). Further, it is established the county may be liable to the builder himself. *J & B Dev. Co. v. King Cy., supra* at 312. Neither of these previous holdings resulted in unlimited municipal liability.

[5]To insure is "To engage to indemnify a person against pecuniary loss from specified perils or possible liability." Black's Law Dictionary 726 (5th ed. 1979).

[6]RCW 4.96.010 provides:

"All political subdivisions, municipal corporations, and quasi municipal corporations of the state, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers, agents or employees to the same extent as if they were a private person or corporation: . . ."

The second issue not reached by the majority is whether Stevens County has immunity from suit for building

inspections performed by its agents. The Stevens County Building Construction Code contains a nonliability clause at section 202(f) of the Uniform Building Code (1979).[3]

By statute, the Legislature has abolished sovereign immunity, providing that a governmental unit shall be liable for its tortious conduct to the same extent as a private person or corporation.[4] *Kelso v. Tacoma,* 63 Wn.2d 913, 916, 390 P.2d 2 (1964) states that the "common–law right of sovereign immunity is not in the municipality but in the sovereign from which the immunity is derived." A waiver by the State of its governmental immunity operates to withdraw such immunity from municipalities as well. *Kelso v. Tacoma, supra* at 918. Following *Kelso,* the Legislature, by statute, extended the abolition of sovereign immunity to the state's political subdivisions. Laws of 1967, ch. 164, § 1, p. 792. Therefore, the Stevens County Building Construction Code is ineffectual to grant greater immunity than that afforded by the State of Washington.

Cases which recognize and uphold the validity of nonliability clauses in state statutes conferring state immunity are not applicable to attempts by a county to limit its liability. *Baerlein v. State,* 92 Wn.2d 229, 595 P.2d 930 (1979) (legislative disclaimers of State's duty under state securities act and administrative regulations for documents filed).

---

[3] "Liability. The building official, or his authorized representative charged with the enforcement of this code, acting in good faith and without malice in the discharge of his duties, shall not thereby render himself personally liable for any damage that may accrue to persons or property as a result of any act or by reason of any act or omission in the discharge of his duties. Any suit brought against the building official or employee because of such act or omission performed by him in the enforcement of any provision of this code shall be defended by legal counsel provided by this jurisdiction until final termination of such proceedings.

"This code shall not be construed to relieve from or lessen the responsibility of any person owning, operating or controlling any building or structure for any damages to persons or property caused by defects, nor shall the code enforcement agency or its parent jurisdiction be held as assuming any such liability by reason of the inspections authorized by this code or any certificates of inspection issued under this code."

[4] RCW 4.96.010.

Further, *Campbell v. Bellevue, supra,* does not stand for the proposition that nonliability clauses contained in a municipal or county ordinance will be upheld. In *Campbell v. Bellevue, supra* at 7, the court found the ordinance did not purport to relieve the City from liability for the tortious acts of its agents, so there was no conflict with RCW 4.96.010 which abolished sovereign immunity.

I would hold the Stevens County Building Construction Code confers no immunity on Stevens County for negligent issuance of building permits.

Having established the County owed both the Murrays and Taylors a duty of reasonable care, I would reverse the dismissal of the County and remand this case for trial on causation and damages.

After modification, further reconsideration denied March 10, 1987.

Review granted by Supreme Court July 2, 1987.